# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 97-10725

---

DANNY LEE BARBER,

                                          Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

                                          Respondent-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

June 23, 1998

Before POLITZ, Chief Judge, KING and DENNIS, Circuit Judges.[*]

POLITZ, Chief Judge:

Danny Lee Barber invoked 28 U.S.C. § 2254 and sought a writ of habeas corpus, challenging his conviction and death sentence for capital murder. The district court rejected his petition. Barber seeks appellate review,[1] contending that

---

[*]Judge King concurs in the judgment and Judge Dennis specially concurs.

[1] Barber requests a Certificate of Appealability (COA); however, because his petition was filed prior to the effective date of the AEDPA his application must be construed as a request for a certificate of probable cause (CPC). **Lindh v. Murphy**, 117 S.Ct. 2059 (1997). The standards for issuing a CPC and the AEDPA-required COA are identical. See **Lucas v. Johnson**, 132 F.3d 1069 (5th Cir. 1998); **Muniz v. Johnson**, 132 F.3d 214 (5th Cir. 1998). **Blankenship v. Johnson**, 106 F.3d 1202 (5th Cir. 1997), *opinion*

the penalty phase testimony by Dr. Clay Griffith relating to the future dangerousness issue violated his fourth, fifth, and fourteenth amendment rights, as well as the rules of **Estelle v. Smith**[2] and **Satterwhite v. Texas**.[3]  In his competency examination of Barber prior to trial Dr. Griffith gave no **Miranda**[4] warnings, nor did he obtain consent of Barber's counsel for the examination.

Considering the record, briefs, and oral argument of counsel, in light of our controlling precedents, the request for a certificate of probable cause must be denied.[5]

## BACKGROUND

Barber was indicted for the October 8, 1979 murder of Janie Ingram during the burglary of her home.   Prior to trial Barber sought a competency examination by Dr. Charles Lett.  The court granted the request and, *sua sponte*, directed that a second psychiatrist, Dr. Clay Griffith, examine Barber and report thereon.  The court found Barber competent to stand trial essentially on the basis of the testimony

---

*withdrawn and superseded on rehearing by*, 118 F.3d 312 (5th Cir. 1997).

[2]451 U.S. 454 (1981).

[3]486 U.S. 249 (1988).

[4]*See* **Miranda v. Arizona**, 384 U.S. 436 (1966).

[5]**Hogue v. Johnson**, 131 F.3d 466 (5th Cir. 1997).

of Dr. Griffith.[6]

In August 1980 Barber was found guilty of capital murder and sentenced to death. On direct appeal the Texas Court of Criminal Appeals affirmed in part but remanded with directions to the trial court to conduct an evidentiary hearing to determine whether Barber had been competent to stand trial.[7] That hearing was conducted and the trial court found Barber competent and the Texas Court of Criminal Appeals affirmed.[8] Barber petitioned for state habeas relief, challenging the testimony of Dr. Griffith. The Texas Court of Criminal Appeals denied that relief, concluding that the admission of the testimony of Dr. Griffith about future dangerousness[9] was error but was harmless error,[10] in light of other overwhelming

---

[6] Dr. Lett otherwise concluded.

[7]**Barber v. State**, 737 S.W.2d 824 (Tex. Crim. App. 1987).

[8]**Barber v. State**, 757 S.W.2d 359 (Tex. Crim. App. 1988), *cert. denied*, **Barber v. Texas**, 489 U.S. 1091 (1989).

[9]Dr. Griffith, permitted to testify about Barber's future dangerousness during the punishment phase, testified that Barber did not suffer from any form of mental illness, but he did have a sociopathic anti-social personality disorder. He testified that a sociopathic personality was characterized by: (1) repeated confrontations with authority; (2) mental laziness preventing success in school; (3) inability to plan for the future; (4) inability to develop useful skills necessary to retain employment; (5) inability to develop personal relationships; (6) inability to feel or show remorse; (7) lack of concern for others; (8) a tendency to derive pleasure from hurting others; (9) inability to learn from experience or punishment; (10) the ability to manipulate others; and (11) the development of extremely strong sex drives with a tendency

3

evidence. The instant proceeding followed.

The district court dismissed Barber's petition for a writ of habeas corpus, concluding that the admission of Dr. Griffith's testimony as to future dangerousness was erroneous but that it did not result in actual prejudice.[11] The district court then denied Barber's request for CPC and Barber timely sought appellate review.

**Analysis**

The district court denied a CPC which we may grant only upon a "substantial showing of the denial of a federal right."[12]

In *Chapman v. California*,[13] the Supreme Court held that in a direct appeal "before a federal constitutional error can be harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[14] In federal

---

toward sexual deviancy. He also testified that petitioner's behavior was becoming increasingly violent and that he
would continue to pose a threat to the safety of others even if he were to be incarcerated.

[10]*See* **Estelle v. Smith**, 451 U.S. 454 (1981).

[11]**Brecht v. Abrahamson**, 507 U.S. 619 (1993) (citing **Kotteakos v. United States**, 328 U.S. 750 (1946)); **Woods v. Johnson**, 75 F.3d 1017 (5th Cir.), *cert. den*ied, 117 S.Ct. 150 (1996).

[12]**Barefoot v. Estelle**, 463 U.S. 880 (1983).

[13]386 U.S. 18 (1967).

[14]**Chapman**, 386 U.S. at 24.

habeas cases, however, the Court in the non-capital case *Brecht v. Abrahamson*[15] held that federal courts may grant relief only when the error "had a substantial and injurious effect in determining the jury's verdict."[16] Barber contends that neither the Texas Court of Criminal Appeals,[17] nor the district court,[18] applied the correct harmless error analysis, urging that the more rigorous standard announced in *Chapman*[19] should apply, even though this is a habeas proceeding, because his *Estelle* claim was not addressed on direct review and therefore never received scrutiny under the more stringent and constitutionally mandated *Chapman* standard.[20]

---

[15]507 U.S. 619 (1993).

[16]**Brecht,** 507 U.S. at 623.

[17]The Texas Court of Criminal Appeals was silent as to which standard it applied.

[18]The district court applied the standard espoused in *Brecht v. Abrahamson* 507 U.S. 619 (1993)(Whether the error "had substantial and injurious effect or influence on the jury's verdict").

[19]386 U.S. 18 (1967)("harmless beyond a reasonable doubt").

[20]Some courts have held that the *Brecht* standard is applicable only when the state appellate court previously has applied the more stringent *Chapman* standard. *See* **Starr v. Lockhart**, 23 F.3d 1280 (8th Cir. 1994) (applying the *Chapman* harmless error standard on habeas review where state courts had not found constitutional error on direct review, and thus, had not performed harmless error analysis); **Ondorff v. Lockhart**, 998 F.2d 1426 (8th Cir. 1993) (same); Other courts have held that the language of *Brecht* applies to all federal habeas proceedings. *See* **Davis v. Executive Director of Dep't of Corrections**,

In December 1997, we decided this issue in *Hogue v. Johnson*.[21] Hogue had contended in a habeas proceeding that his death sentence was unconstitutional because a guilty plea rape conviction from 1974, set aside because of ineffective assistance of counsel, was admitted during the sentencing phase of his trial. Our panel concluded that not only was Hogue's claim procedurally barred, but even if error had occurred the conviction did not have a "substantial and injurious effect" on the jury. We rejected Hogue's contention that the *Chapman* standard should apply, stating: "*Brecht* rather than *Chapman*, enunciates the appropriate standard for determining whether a constitutional error was harmless in a federal habeas challenge to a state conviction or sentence even though no state court ever made any determination respecting whether or not the error was harmless."[22] The court

_____

100 F.3d 750 (10th Cir. 1996) (*Brecht* standard applies to all federal habeas proceedings); **Sherman v. Smith**, 89 F.3d 1134 (4th Cir. 1996) (same); **Horsely v. Alabama**, 45 F.3d 1486 (11th Cir. 1995); **Tyson v. Trigg**, 50 F.3d 436 (7th Cir. 1995)(federal habeas corpus courts should apply the *Kotteakos* standard even if state courts have not conducted a *Chapman* analysis.)

[21]131 F.3d 466 (5th Cir. 1997).

[22]131 F.3d at 499; *see* **Davis v. Executive Director of Dep't of Corrections**, 100 F.3d 750 (10th Cir. 1996), *cert. denied*, 117 S.Ct. 1703 (1997); **Sherman v. Smith**, 89 F.3d 1134 (4th Cir. 1996), *cert. denied*, 117 S.Ct. 765 (1997); **Tyson v. Trigg**, 50 F.3d 436 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 697 (1996); **Horsely v. State of Alabama**, 45 F.3d 1486 (11th Cir.), *cert. denied*, 116 S.Ct. 410 (1995); **Smith v. Dixon**, 14 F.3d 956 (4th Cir.) (en banc), *cert. denied*, 513 U.S. 841 (1994).

reiterated that *Brecht* divided cases by two criteria--'structural errors versus non structural errors' and 'direct versus collateral review'-- and "[n]o third classification of cases was made for those where the state court determined the error was harmless and those that did not address harmlessness."[23]

Bound by the prior panel's decision, we would note that our holding in *Hogue* may be viewed as inconsistent with the Supreme Court's underlying reasoning for applying the *Brecht* standard in federal habeas review. The *Brecht* court based its adoption of the *Kotteakos* standard on federal habeas review on three important considerations: (1) state's interest in finality of convictions that have survived direct review within state court systems; (2) the principles of comity and federalism; and (3) that "[l]iberal allowance of the writ...degrades the prominence of the trial itself."[24] The Supreme Court in *Brecht* stated:

> State courts are fully qualified to identify constitutional error and evaluate its prejudicial effect on the trial process under *Chapman*, and state courts often occupy a superior vantage point from which to evaluate the effect of trial error. For these reasons, it scarcely seems logical to require federal habeas courts to engage in the identical

---

[23]**Hogue,** 131 F.3d at 499. Texas courts have also stated "[i]t is clear that for direct review constitutional error, the state applies *Chapman*." It appears that even state courts broadly assume that *Chapman* need not apply to collateral review of constitutional errors. **Ex Parte Fierro**, 934 S.W.2d 370, 372 (Tex. Crim. App. 1996).

[24]**Brecht,** 507 U.S. at 635.

7

approach to harmless-error review that *Chapman* requires state courts to engage in on direct review.[25]

In this capital case, unlike in *Brecht* which reached the Supreme Court after two state appellate courts, a federal district court, and a federal court of appeals had reviewed the error under *Chapman*, no court, at the state or federal level, has reviewed Barber's constitutional error under the *Chapman* standard.

Even if persuaded that *Hogue* is inconsistent with *Brecht*, we may not ignore the decision, for in this circuit one panel may not overrule the decision of a prior panel. Absent intervening legislation or a decision of the Supreme Court,[26] only our en banc court is so empowered. Accordingly, we must deny Barber's application for a CPC on these issues.

Barber also alleged numerous other constitutional errors, including a charge that the inordinate delay in carrying out his execution violates the eighth amendment; that the retrospective competency hearing violated his due process rights; that he received ineffective assistance of counsel; and prosecutorial misconduct. After reviewing all of same, we find no basis therein for appellate review.

Barber's request for a certificate of probable cause is DENIED.

---

[25]**Brecht,** 507 U.S. at 636.

[26]**Ketchum v. Gulf Oil Corp.**, 798 F.2d 159 (5th Cir. 1986).

DENNIS, J., specially concurring:


Although I recognize that this panel is bound by this court's prior decision in *Hogue v. Johnson,* 131 F.3d 466 (5th Cir. 1997), *cert. denied,* 118 S. Ct. 1297 (1998), I write specially to express my belief that the Supreme Court's holding in *Chapman v. California* requires that when state courts on direct review have disregarded their constitutional duty to apply the rigorous "beyond-a-reasonable-doubt" standard to constitutional error, federal courts on collateral review must apply the *Chapman* harmless-error standard as part of their obligation to vindicate federal constitutional rights and to protect criminal defendants from unconstitutional convictions and sentences. *See Chapman v. California,* 386 U.S. 18, 24 (1967) ("[W]e hold . . . that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). "The State bears the burden of proving that an error passes muster under

this standard." *Brecht v. Abrahamson,* 507 U.S. 619, 630 (1993). The *Chapman* standard protects those rights that are "rooted in the Bill of Rights, offered and championed in the Congress by James Madison, who told the Congress that the 'independent' federal courts would be the 'guardians of those rights.'" *Chapman,* 386 U.S. at 21. Therefore, the *Chapman* harmless-error rule is of constitutional magnitude because it is the "necessary rule" fashioned by the Supreme Court to fulfill its responsibility "to protect people from infractions by the States of federally guaranteed rights." *Id.*

The Supreme Court's subsequent holding in *Brecht v. Abrahamson* did not lessen that requirement, but only relieved federal habeas courts of the obligation of duplicating the *Chapman* analysis when state courts on direct review already have satisfied this constitutionally mandated harmless-error review. It is clear to me that the *Brecht* Court's new rule assumes that a finding of harmlessness by the state courts under the rigorous *Chapman* rule always will precede federal habeas corpus review of the harmlessness question under the less

10

stringent rule of *Kotteakos v. United States,* 328 U.S. 750 (1946). *See Brecht,* 507 U.S. at 636 ("[I]t scarcely seems logical to require federal habeas courts to engage in the identical approach to harmless-error review that *Chapman* requires state courts to engage in on direct review."). In support of its decision, the *Brecht* Court adverted to the State's interest in the finality of convictions that survive direct review within the state court system. *Id.* at 635. The Court relied also on the principles of comity and federalism: "'Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'" *Id.* (quoting *Engle v. Isaac,* 456 U.S. 107, 128 (1982)). Federal courts cannot justify abstaining from the enforcement of an individual's constitutional right in deference to the systemic values of finality, federalism, and comity, however, unless there has in fact been a good-faith State effort to protect constitutional rights by applying the *Chapman* standard. *See id.;* John H. Blume & Stephen P. Garvey, *Harmless Error in Federal Habeas Corpus After*

11

*Brecht v. Abrahamson,* 35 WM. & MARY L. REV. 163, 183-84 (Fall 1993).

Furthermore, *Brecht* was a non-capital case; it did not present, and the Court did not address, the applicability of its new rule to capital cases. "[T]he Eighth Amendment requires increased reliability of the process by which capital punishment may be imposed." *Herrera v. Collins,* 506 U.S. 390, 405 (1993). Moreover, because of the unique "severity" and "finality" of the death penalty, capital cases demand heightened standards of reliability. *Beck v. Alabama,* 447 U.S. 625, 637 (1980). In this case, Barber will be executed with no state court ever having demanded that the State prove beyond a reasonable doubt that the constitutional error did not contribute to the verdict obtained. By repeating the state court's error, this court will have failed in its obligation to "protect people from infractions by the States of federally guaranteed rights." *See Chapman,* 386 U.S. at 21.

For these reasons, I conclude that this court in *Hogue,* by adopting a per se rule that all constitutional

12

error on federal collateral review shall be analyzed under the lenient *Brecht/Kotteakos* standard, regardless of whether the state court applied the correct harmless-error standard on direct review, mistakenly failed to recognize its federal duty to determine whether there has been a good-faith State effort to protect constitutional rights by applying the *Chapman* standard.

DENNIS, J., specially concurring:


Although I recognize that this panel is bound by this court's prior decision in *Hogue v. Johnson,* 131 F.3d 466 (5th Cir. 1997), *cert. denied,* 118 S. Ct. 1297 (1998), I

14

write specially to express my belief that the Supreme Court's holding in *Chapman v. California* requires that when state courts on direct review have disregarded their constitutional duty to apply the rigorous "beyond-a-reasonable-doubt" standard to constitutional error, federal courts on collateral review must apply the *Chapman* harmless-error standard as part of their obligation to vindicate federal constitutional rights and to protect criminal defendants from unconstitutional convictions and sentences. *See Chapman v. California,* 386 U.S. 18, 24 (1967) ("[W]e hold . . . that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). "The State bears the burden of proving that an error passes muster under this standard." *Brecht v. Abrahamson,* 507 U.S. 619, 630 (1993). The *Chapman* standard protects those rights that are "rooted in the Bill of Rights, offered and championed in the Congress by James Madison, who told the Congress that the 'independent' federal courts would be the 'guardians of those rights.'" *Chapman,* 386 U.S. at 21.

15

Therefore, the *Chapman* harmless-error rule is of constitutional magnitude because it is the "necessary rule" fashioned by the Supreme Court to fulfill its responsibility "to protect people from infractions by the States of federally guaranteed rights." *Id.*

The Supreme Court's subsequent holding in *Brecht v. Abrahamson* did not lessen that requirement, but only relieved federal habeas courts of the obligation of duplicating the *Chapman* analysis when state courts on direct review already have satisfied this constitutionally mandated harmless-error review. It is clear to me that the *Brecht* Court's new rule assumes that a finding of harmlessness by the state courts under the rigorous *Chapman* rule always will precede federal habeas corpus review of the harmlessness question under the less stringent rule of *Kotteakos v. United States,* 328 U.S. 750 (1946). *See Brecht,* 507 U.S. at 636 ("[I]t scarcely seems logical to require federal habeas courts to engage in the identical approach to harmless-error review that *Chapman* requires state courts to engage in on direct review."). In support of its decision, the *Brecht*

16

Court adverted to the State's interest in the finality of convictions that survive direct review within the state court system. *Id.* at 635. The Court relied also on the principles of comity and federalism: "'Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'" *Id.* (quoting *Engle v. Isaac,* 456 U.S. 107, 128 (1982)). Federal courts cannot justify abstaining from the enforcement of an individual's constitutional right in deference to the systemic values of finality, federalism, and comity, however, unless there has in fact been a good-faith State effort to protect constitutional rights by applying the *Chapman* standard. *See id.;* John H. Blume & Stephen P. Garvey, *Harmless Error in Federal Habeas Corpus After Brecht v. Abrahamson,* 35 WM. & MARY L. REV. 163, 183-84 (Fall 1993).

Furthermore, *Brecht* was a non-capital case; it did not present, and the Court did not address, the applicability of its new rule to capital cases. "[T]he Eighth Amendment requires increased reliability of the

17

process by which capital punishment may be imposed." *Herrera v. Collins,* 506 U.S. 390, 405 (1993). Moreover, because of the unique "severity" and "finality" of the death penalty, capital cases demand heightened standards of reliability. *Beck v. Alabama,* 447 U.S. 625, 637 (1980). In this case, Barber will be executed with no state court ever having demanded that the State prove beyond a reasonable doubt that the constitutional error did not contribute to the verdict obtained. By repeating the state court's error, this court will have failed in its obligation to "protect people from infractions by the States of federally guaranteed rights." *See Chapman,* 386 U.S. at 21.

For these reasons, I conclude that this court in *Hogue,* by adopting a per se rule that all constitutional error on federal collateral review shall be analyzed under the lenient *Brecht/Kotteakos* standard, regardless of whether the state court applied the correct harmless-error standard on direct review, mistakenly failed to recognize its federal duty to determine whether there has been a good-faith State effort to protect constitutional

18

rights by applying the *Chapman* standard.