**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 97-10823
_____


CHARLES ANTHONY BOYD,

                    Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

                    Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Texas

February 12, 1999

Before KING, Chief Judge, POLITZ, and EMILIO M. GARZA, Circuit
Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant Charles Anthony Boyd was convicted of capital murder
and sentenced to death.[1]  He requests a Certificate of Probable
Cause ("CPC") to appeal the district court's denial of his petition
for habeas corpus under 28 U.S.C. § 2254.  He contends that the
district court erred because (1) counsel was ineffective for
failing to present mitigating evidence of his retardation to the
jury at sentencing; (2) the jury was prevented impermissibly from

---

[1] For a fuller exposition of the facts of the case, see _Boyd
v. State_, 811 S.W.2d 105, 107-08 (Tex. Crim. App.)(en banc), _cert.
denied_, 502 U.S. 971, 112 S. Ct. 448, 116 L. Ed. 2d 466 (1991).

giving mitigating effect to evidence of his retardation and his positive character traits; (3) the failure to instruct the jury on the parole implications of a life sentence in a capital case rendered the Texas sentencing scheme unconstitutional; and (4) the admission of extraneous offenses at the sentencing phase violated due process and the Eighth Amendment. We deny Boyd's request for a CPC.

I

A Texas jury convicted Boyd of capital murder in 1987, and sentenced him to death, answering affirmatively the special sentencing issues.[2] On direct appeal, the Texas Court of Criminal Appeals affirmed his conviction. *See Boyd v. State*, 811 S.W.2d 105 (Tex. Crim. App.)(en banc), *cert. denied*, 502 U.S. 971, 112 S. Ct. 448, 116 L. Ed. 2d 466 (1991). Boyd filed a state habeas corpus application, and the Texas Court of Criminal Appeals denied relief.

Boyd then filed a federal habeas petition in district court pursuant to 28 U.S.C. § 2254. The district court denied habeas relief for all but two of Boyd's claims. The district court

---

[2] At the time, Article 37.071 of the Texas Code of Criminal Procedure provided that, after finding a defendant guilty, a jury must decide (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death would occur; (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased. If the jury found the state proved beyond a reasonable doubt that the answer to all three is yes, then the death sentence was imposed. Otherwise, life imprisonment resulted. *See* Tex. Code Crim. Pro. Ann. art. 37.071.

-2-

ordered an evidentiary hearing concerning the claim that trial counsel's failure to develop and to present evidence of Boyd's mental retardation constituted ineffective assistance of counsel, and the claim that the trial court erred in failing to give a jury instruction under *Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989). The Magistrate Judge conducted an evidentiary hearing, recommending that the district court deny relief. The district court adopted the findings of the Magistrate Judge and denied relief. Boyd filed a request for a CPC, which the district court also denied.[3] Boyd appeals this denial. To obtain a CPC, Boyd must make a substantial showing that he has been denied a federal right. *See Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983).

## II

Boyd argues he received ineffective assistance of counsel in violation of the Sixth Amendment. He asserts that he received ineffective assistance because his trial counsel failed to discover and to present evidence of mental retardation, which could have been used to challenge the voluntariness of his confessions and could have been relevant to the jury in

---

[3] Boyd filed his federal habeas petition on March 5, 1992, and thus the 1996 amendments to the Antiterrorism and Effective Death Penalty Act ("AEDPA") are inapplicable to this suit. *See Lindh v. Murphy,* 521 U.S.320, )), 117 S. Ct. 2059, 2068, 138 L. Ed. 2d 481 (1997)(holding the AEDPA applicable to petitions filed after the effective date of April 24, 1996). We construe his request for a Certificate of Appealability ("COA"), filed on August 26, 1997, as a request for a CPC. *See Barber v. Johnson*, 145 F.3d 234 (5th Cir. 1998), *cert. denied*, 1998 WL 635820 (U.S. Nov. 16, 1998).

-3-

determining whether to impose the death penalty.

In order to prove ineffective assistance of counsel, Boyd must show (1) deficient performance, meaning that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the deficient performance resulted in actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 692, 104 S. Ct. 2052, 2064, 2067, 80 L. Ed. 2d 674 (1984). As the Court stated in *Strickland*, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065.

According to Boyd, his trial counsel performed deficiently in failing to discover mitigating evidence of his mental retardation. At trial, his attorneys introduced two prison packets that were created during Boyd's prior incarceration. One prison packet indicated Boyd has an I.Q. of 67, and the other stated his I.Q. is 80. At the evidentiary hearing, Boyd presented testimony from Dr. James Shadduck that an I.Q. below 70 indicates retardation, and that Boyd received an I.Q. score of 64 on a test administered by him. Shadduck testified he had reviewed school records showing an I.Q. of 71. Shadduck concluded that Boyd was retarded and that his retardation should have been apparent to any observer. Dr. Alan Hopewell also testified that he had examined Boyd and found him to be retarded. Other

-4-

witnesses testified to Boyd's mental state, including family members and attorneys who had worked with Boyd. Citing the I.Q. tests introduced at trial, along with the post-trial I.Q. tests, Boyd alleges that his counsel's failure to investigate his mental capacity constituted ineffective assistance.

The district court found that the evidence of Boyd's retardation is conflicting. The district court stated that the credibility of Drs. Shadduck and Hopewell suffered on cross-examination. The credibility of Boyd's mother and sister, who testified to Boyd's retardation, was undermined by their earlier contradictory testimony at the sentencing phase of the trial. The district court did not credit the testimony of two of Boyd's other witnesses who were either employees or associates of Boyd's present counsel.

Other evidence cast doubt on the obviousness of Boyd's retardation. Boyd's attorney Paul Brauchle testified that he did not believe that Boyd was retarded, based on his observations of Boyd and from information from Boyd's family. He stated that Boyd assisted him in the jury selection process and that he was unable to remember having had information that Boyd scored low on an I.Q. test. The district court found Brauchle's testimony credible. The district court additionally found the testimony of Michael Byck, who also served as trial counsel, to be highly credible. Byck testified he saw no "red flags" that would indicate Boyd's retardation. Conversations with Boyd's family, and the school records, did not suggest to Byck that Boyd was

retarded. The district court concluded that the isolated I.Q. score of 67 in the prison packet was not enough to compel the attorneys to investigate, when the other evidence available at trial contradicted a suggestion of retardation.

Under *Strickland,* we consider whether the failure of Boyd's counsel to develop and to present the evidence of retardation constituted deficient performance. Boyd's lowest I.Q. score of 64 is on the upper borderline of mental retardation. *See Penry*, 492 U.S. at 308 n.1, 109 S. Ct. at 2941 n.1. In other cases, we have found that counsel did not perform deficiently in failing to develop similar evidence of retardation. In *Andrews v. Collins*, 21 F.3d 612, 624 (5th Cir. 1994), the defendant presented an I.Q. score of 68, which conflicted with testimony presented by the state that Andrews's I.Q. was between 70 and 80. We found that Andrews's counsel did not perform deficiently in failing to present the evidence of his low intelligence. *See also Smith v. Black*, 904 F.2d 950, 977 (5th Cir. 1990)(finding that counsel was not deficient for failing to present mitigating evidence of I.Q. of 70), *vacated on other grounds*, 503 U.S. 930, 112 S. Ct. 1463, 117 L. Ed. 2d 609, *aff'd in relevant part*, 970 F.2d 1383 (5th Cir. 1992); cf. *Jones v. Thigpen*, 788 F.2d 1101, 1103 (5th Cir. 1986)(finding counsel ineffective for failing to present evidence of I.Q. score below 41).

The evidence of Boyd's retardation must be considered in tandem with the impressions that he gave the attorneys. "The reasonableness of counsel's actions may be determined or

substantially influenced by the defendant's own statements or actions. . . . In particular, what investigation decisions are reasonable depends critically on such information." *Strickland,* 466 U.S. at 691, 104 S. Ct. at 2066. Boyd's attorneys testified that they did not believe Boyd was retarded, based on their observations and interactions with him, and the district court found this testimony to be credible. The attorneys decided not to investigate Boyd's mental state because they did not believe retardation was an issue. In light of both Boyd's own actions and the conflicting evidence of retardation, the failure of Boyd's counsel to present evidence of Boyd's borderline retardation cannot be considered to have fallen "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064.

Even had counsel been aware of Boyd's retardation, it was not ineffective assistance to abstain from further investigation. The Court determined in *Penry* that mitigating evidence of mental retardation has relevance to moral culpability beyond the special issues. *See Penry,* 492 U.S. at 322, 109 S. Ct. at 2948. Prior to *Penry*, however, evidence of mental retardation had a greater potential for negatively impacting the defense, because the jury might use such evidence to support a "yes" answer to the second special issue, the defendant's future dangerousness. *See Lackey v. Scott*, 28 F.3d 486, 499 (5th Cir. 1994), *vacated on other grounds*, 52 F.3d 98, 99 (5th Cir. 1995). In cases tried before *Penry*, it was not ineffective assistance to fail to seek or to

develop evidence regarding a defendant's mental retardation. *See Washington v. Johnson*, 90 F.3d 945, 953 (5th Cir. 1996)("This case was tried before the Supreme Court's *Penry* decision, and we have not previously held counsel incompetent for failing to anticipate *Penry*."), *cert. denied*, )) U.S. )), 117 S. Ct. 1259, 137 L. Ed. 2d 338 (1997). Because the evidence of retardation may have influenced the jury negatively, Boyd's counsel did not perform deficiently in failing to investigate the issue further. The potential negative impact of the retardation evidence, in addition to the cold-blooded nature of the murder and Boyd's other violent conduct, persuades us that the outcome of the sentencing would not have been different if counsel would have investigated further. *See Andrews,* 21 F.3d at 624 (concluding that the failure to introduce mitigating evidence, which included evidence of mental retardation, did not prejudice defendant because of the cold-blooded nature of the crime); *King v. Puckett*, 1 F.3d 280, 285 (5th Cir. 1993) (concluding "that the failure to offer mitigating evidence in the form of King's diminished mental capacity" did not affect "the outcome of his sentencing."); *Glass v. Blackburn*, 791 F.2d 1165, 1170-71 (5th Cir. 1986)(finding no prejudice from counsel's failure to introduce mitigating evidence because the murder was calculated and cold-blooded). Boyd's claim of ineffective assistance is meritless because the failure to develop the evidence of Boyd's retardation was not deficient performance, nor was it prejudicial to the defense.

Additionally, Boyd contends that counsel rendered ineffective assistance because, apart from the sentencing phase, evidence of mental retardation could have been used to challenge the voluntariness of his confession. The trial judge admitted Boyd's confession after a hearing to determine the voluntariness of his confession. Boyd has not shown that the conflicting evidence of borderline retardation would have had any impact on the resolution of this issue. We conclude therefore that Boyd's counsel did not prejudice him by failing to develop retardation evidence to challenge his confession. Boyd has not substantially shown the denial of his right to effective assistance of counsel.

III

According to Boyd, the Texas capital sentencing scheme in effect at the time of his sentencing, Art. 37.071 of the Texas Code of Criminal Procedure, impermissibly limited the jury's ability to give effect to mitigating evidence that he presented at trial. The Supreme Court held in *Penry* that if a jury cannot give effect to mitigating evidence about a defendant's background, character, or other circumstances that reflect a reduced moral culpability, then the trial court must provide instructions that allow the jury to consider such evidence. *See Penry*, 492 U.S. at 319-28, 109 S. Ct. at 2947-52. The Court found in *Penry* that the special issues failed to give the jurors a vehicle to consider evidence of Penry's childhood abuse and severe mental retardation that left him unable to learn from his

-9-

mistakes.  *See id.*  Boyd contends that the special issues did not permit the jurors to consider evidence of his mental retardation or of his positive character traits.

In considering a *Penry* claim, we determine (1) whether the evidence was constitutionally relevant mitigating evidence, and if so, (2) whether the evidence was beyond the effective reach of the jurors.  *See Davis v. Scott*, 51 F.3d 457, 460 (5th Cir. 1995).  Relevant mitigating evidence, which is evidence that one is less culpable for his crime, must show "(1) a 'uniquely severe permanent handicap[] with which the defendant was burdened through no fault of his own,' and (2) that the criminal act was attributable to this severe permanent condition."  *Id.* at 461 (citations omitted).

A

Boyd contends that the evidence of his retardation entitled him to a special jury instruction under *Penry*.[4]  A petitioner cannot base a *Penry* claim on evidence that could have been but was not proffered at trial.  *See West v.* Johnson, 92 F.3d 1385, 1405 (5th Cir. 1996), *cert. denied*, )) U.S.)), 117 S. Ct. 1847, 137 L. Ed. 2d 1050 (1997); *Crank v. Collins*, 19 F.3d 172, 176 (5th Cir. 1994).  The only evidence of Boyd's retardation presented at trial was the I.Q. score of 67 in the prison packet.

---

[4]  Boyd did not request a special jury instruction at trial. We have stated that "in a case such as this, which was tried before *Penry* was decided, the petitioner need not have requested an instruction on mitigating evidence, nor must he have objected to the lack of such an instruction." *Motley v. Collins*, 18 F.3d 1223, 1229 (5th Cir. 1994).

Accordingly, Boyd argues that this I.Q. score entitled him to a special instruction.

In order to be entitled to a special instruction, however, Boyd must show how the evidence of retardation is constitutionally relevant mitigating evidence.  Even assuming the I.Q. score establishes a "uniquely severe permanent handicap," it does not establish "that the criminal act was attributable to this severe permanent condition."  *Davis,* 51 F.3d at 461.  *See Harris v. Johnson*, 81 F.3d 535, 539 n.11 (5th Cir.)(rejecting that a nexus is inherent between any evidence of mental retardation and a crime), *cert. denied*, 517 U.S. 1227, 116 S. Ct. 1863, 134 L. Ed. 2d 961 (1996); *Davis,* 51 F.3d at 462 (stating that *Penry* claim fails despite evidence of mental problems, due to failure to demonstrate how crime was attributable to mental problems).  We conclude that Boyd has not substantially shown that the failure to issue a special instruction based on the I.Q. score of 67 deprived him of a constitutional right.

B

Boyd contends that the special issues prevented the jury from fully considering testimony from his employer, family members, and friends regarding his positive character traits.  He believes that this testimony entitled him to a general mitigation instruction under *Penry,* because the evidence was beyond the scope of the special issues.  The failure to provide such an instruction thus violated his right to due process under the Fifth and Fourteenth Amendments, and his right to be free from

-11-

cruel and unusual punishment under the Eighth Amendment.

We have rejected this argument on the merits. Evidence of good character tends to show that the crime was an aberration, which may support a negative answer to the special issue regarding the future dangerousness of the defendant. *See id;* *Barnard v. Collins*, 958 F.2d 634, 640 (5th Cir. 1992)("[Good character] evidence can find adequate expression under [the] second special issue."). The jury could have considered the evidence of Boyd's positive character traits in the special issues, and thus Boyd was not entitled to a general mitigation instruction under *Penry.* Boyd has failed to show that the denial of such an instruction violated his constitutional rights.

IV

Boyd argues that the Texas sentencing scheme is unconstitutional because the trial court did not instruct the jury concerning the parole implications of a life sentence in a capital case. In *Simmons v. South Carolina*, 512 U.S. 154, 169, 114 S. Ct. 2187, 2196, 129 L. Ed. 2d. 133 (1994), the Supreme Court held that due process requires a trial court to instruct the jury in a prosecution for capital murder that the defendant would be statutorily ineligible for release on parole if the jury imposed a life sentence. Relief based on *Simmons* is foreclosed by *Teague.* *See O'Dell v. Netherland*, 521 U.S. 151, 117 S. Ct. 1969, 1978, 138 L. Ed. 2d 351 (1997)(declaring *Simmons* a "new rule" under *Teague*). Additionally, in *Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994), we interpreted *Simmons* to mean that

-12-

"due process requires the state to inform a sentencing jury about a defendant's parole ineligibility when, and only when, (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole." Although the State argued that Boyd would represent a danger in the future, Boyd would have been eligible for release on parole had he received a life sentence. *See* Tex. Code Crim. Proc. Ann. § 42.18(8)(b)(2). Boyd's eligibility for parole renders *Simmons* inapplicable to his case. *See Allridge*, 41 F.3d at 222 (concluding *Simmons* unavailing in similar case). Hence, Boyd has not shown that the trial court violated his constitutional rights by failing to instruct the jury concerning his parole ineligibility.

V

Boyd asserts that the admission of similar unadjudicated offenses during the punishment phase, without a limiting instruction, violated his right to due process under the Fifth and Fourteenth Amendments and constituted cruel and unusual punishment in violation of the Eighth Amendment. Boyd previously conceded the probative value of evidence of two earlier killings, which were committed under identical factual circumstances, as to the issue of his future dangerousness. He maintains that the court should have provided an instruction limiting the jury's consideration of the extraneous evidence to that issue alone.

The evidence of the extraneous offenses was, as the Magistrate Judge found, relevant to the first and third special

-13-

issues.  The similarity of the other offenses was probative as to the first issue, whether Boyd acted deliberately.  The other offenses also were relevant to the third issue, whether he acted in response to provocation by his victim.  Even if the evidence was not relevant directly to the first or third special issues, the Constitution does not require a limiting instruction.  We have acknowledged that:

> [T]he Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating circumstances or statutory mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime. . . What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.

*Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir. 1987)(quoting *Barclay v. Florida*, 463 U.S. 939, 967, 103 S. Ct. 3418, 3433, 77 L. Ed. 2d 1134 (1983)(Stevens, J., concurring)(citations and quotation omitted)).  Boyd does not suggest that a limiting instruction is necessary to ensure an individualized determination at the sentencing phase.  Boyd has failed to show that the trial court denied him a constitutional right when it refused to give a limiting instruction as to the evidence of extraneous offenses.

V

For the forgoing reasons, we conclude that Boyd has failed to make a substantial showing of the denial of a federal right. Therefore, we DENY his request for a CPC.