United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-41179

_____

Michael Lynn RILEY,

Petitioner - Appellant,

versus

Doug DRETKE, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Texas

_____

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Petitioner Michael Lynn Riley ("Riley") is a death-row inmate in the custody of the Texas Department of Criminal Justice, Institutional Division. The district court granted Riley a certificate of appealability ("COA") based on one of his sub-claims of ineffective assistance of counsel.[1] Specifically, Riley argues that the state habeas court wrongly denied him habeas relief because evidence showed that his trial counsel failed to investigate and present facts supporting Riley's alleged

---

[1] Riley also petitioned this Court to grant him three additional COAs. That petition was denied in a separate opinion, *Riley v. Cockrell*, 339 F.3d 308 (5th Cir. 2003).

1

mental retardation. On appeal, Riley also argues that the district court abused its discretion in denying him investigative funds. For the reasons set forth below, we reject both arguments.

## I. FACTS AND PROCEEDINGS

On February 1, 1986, Riley fatally stabbed 23-year-old Winona Lynn Harris. The state of Texas twice tried and twice convicted Riley for capital murder. During the first trial, Riley submitted into evidence a 1973 evaluation from the Terrell State Hospital assigning him an I.Q. score of 67, a level consistent with borderline mental retardation. The jury returned a guilty verdict and imposed a sentence of death. The first conviction was subsequently overturned on appeal because of an error in jury selection.

In preparation for Riley's second trial, Riley's lead trial counsel, William Wright ("Wright"), became aware of the 1973 I.Q. test. Despite this knowledge, Wright determined that Riley was not mentally retarded based on Wright's personal observations of and interactions with Riley, interviews with Riley's family, and school, probation and juvenile records. Furthermore, Wright decided to forego presenting the prior I.Q. test because he believed that presenting it would detract from the argument that Riley would not pose a future threat to society. Wright believed that the prior I.Q. test was more likely to aggravate than to further the trial strategy.

Although Wright did not believe that Riley was mentally retarded, Wright still employed a psychologist, Dr. Patrick Lawrence ("Dr. Lawrence"), to determine whether Riley posed a future threat to society. In meeting with Dr. Lawrence, Wright discussed the 1973 I.Q. test with him. Part of Dr. Lawrence's examination of Riley consisted of administering a more recently developed intellectual aptitude test. During the second trial, Dr. Lawrence testified as an expert and opined that

Riley's mental state would not pose a future threat to society; Dr. Lawrence did not testify as to Riley's I.Q.

After his second conviction and death sentence, Riley petitioned for a state habeas proceeding, arguing, *inter alia*, that Wright had failed to adequately investigate and present mitigating evidence of mental retardation. The state habeas court held that Wright had conducted "a thorough and complete investigation as to other existence of retardation evidence," and that Wright had made a reasonable tactical decision that the 1973 I.Q. test would not benefit Riley in the overall trial strategy.

Upon exhausting his habeas claims in state court, Riley sought federal habeas relief. The federal district court also denied Riley habeas relief, but did grant Riley a COA with respect to the above argument. Riley then petitioned the district court for funds to investigate circumstances surrounding Wright's determination that Riley was not mentally retarded. The court denied this motion.

On appeal, Riley presents his argument for which the district court granted a COA and challenges the district court's denial of his motion for investigatory funds.

## II. STANDARD OF REVIEW

Because Riley filed his habeas petition on April 1, 1998, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to his appeal. *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 324-26 (1997) (noting that the AEDPA applies to all federal habeas petitions filed on or after April 24, 1996)). According to the AEDPA, habeas relief cannot be granted unless the challenged state court proceeding resulted in (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "a decision that was

3

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Under subpart (d)(1) of § 2254, "unreasonable" does not mean merely incorrect. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). "[A]n application of clearly established Supreme Court precedent must be incorrect *and* unreasonable to warrant federal habeas relief." *Id.* (internal quotations omitted); *accord Williams v. Taylor*, 529 U.S. 362, 406 (2000).

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Lockett v. Anderson*, 230 F.3d 695, 710 (5th Cir. 2000). The district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Beazley v. Johnson*, 242 F.3d 248, 255 (5th Cir. 2001).

This Court reviews a district court's denial of investigative funds pursuant to 21 U.S.C. § 848(q) under an abuse of discretion standard. *Clark v. Johnson*, 202 F.3d 760, 769 (5th Cir. 2000).

## III. DISCUSSION

A. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a habeas petitioner must satisfy *Strickland v. Washington*'s two-prong test: first, the petitioner must affirmatively show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; and second, the petitioner must show that the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984). In applying this test, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

4

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted).

1. Wright's representation met an objective standard of reasonableness.

a. Wright investigated the possibility of mental retardation.

Riley first argues that Wright's conduct fell below an objective standard of reasonableness because Wright allegedly failed to adequately investigate whether Riley was retarded. In support of this argument, Riley relies on *Martin v. Maggio,* 711 F.2d 1273, 1280 (5th Cir. 1983), in which this Court stated that effective counsel must conduct a reasonable amount of pretrial investigation. "The extent and scope of the required investigation depend on the number of issues in the case, the relative complexity of those issues, the strength of the government's case, and the overall strategy of trial counsel." *Id.* Riley's claim is without merit. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . . In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 U.S. at 691. In *Boyd v. Johnson*, 167 F.3d 907, 909-11 (5th Cir. 1999), this Court considered whether a defendant's counsel should have investigated the possibility that the defendant was mentally retarded where the defendant had scored 67 on a prior I.Q. test. Despite the fact that at the habeas hearing the defendant presented evidence independent of the prior I.Q. test showing that he was in fact retarded, this Court determined that the attorney's own subjective evaluation of his client was sufficient to form a reasonable belief that the defendant was not mentally retarded. *Id.* at 910. The defendant's counsel reached this belief based on his observations of the accused, information from the accused's family, and school records. *Id.* Of particular importance was the fact that the defendant assisted counsel in the jury selection process. *Id.*

In the instant case, Wright testified that he evaluated Riley's mental status based on his interactions with Riley while preparing for trial, discussions with Riley's family members, and Riley's school, probation and juvenile records. Wright observed that Riley was "an intelligent part" of his own defense, taking "a very active part in his voir dire" and deciding who would sit on the jury. It is noteworthy that in *Boyd,* similar observations were deemed sufficient to overcome the defendant's additional evidence tending to show that he was retarded. 167 F.3d at 910. Here, Riley failed to offer any evidence that he was retarded other than the I.Q. test conducted twelve years before the crime.

Moreover, unlike the counsel in *Boyd*, Wright even hired a psychologist and discussed the 1973 I.Q. test with him. Dr. Lawrence performed an intellectual abilities test on Riley. These facts, which were not even present in *Boyd*, further strengthen the conclusion that Wright performed an adequate pre-trial investigation.

Based on the foregoing evidence, the state habeas court determined that Riley's trial counsel made "a thorough and complete investigation" of circumstances suggesting that Riley could have been mentally retarded. This finding in no way contravenes the evidence in the record. The state habeas court finding was not "an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d)(2).

b. Wright reasonably chose not to present evidence of mental retardation.

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003); *Strickland*, 466 U.S. at 690-91. "[E]vidence of [a defendant's] retardation must be considered in tandem with the impressions that he gave the attorneys." *Boyd*, 167 F.3d at 910. Given that Wright

6

sufficiently investigated the possibility that Riley was mentally retarded, Riley is precluded from further arguing that Wright should have presented evidence that Wright failed to discover in his investigation. Riley's argument is limited to counsel's decision not to present the 1973 I.Q. test as evidence.

Wright's decision to forego presenting that specific evidence of mental deficiency seems reasonable under this Circuit's caselaw. In *Motley v. Collins*, 18 F.3d 1223, 1227-28 (5th Cir. 1994), this Court opined that a trial counsel's decision to not present evidence of organic brain damage was a reasonable strategy because such evidence could have disfavored the defendant on the future dangerousness special issue. Consistent with *Motley*, Wright's decision to forego presenting the 1973 I.Q. test to the jury was reasonable given Wright's strategy of arguing that Riley would not be a future threat to society. Furthermore, because his own impressions led Wright to believe that Riley was not mentally retarded, Wright reasonably believed that the jury could have reached the same conclusion. If this were so, a test indicating otherwise could discredit Riley's defense. Thus, Riley fails to satisfy the first prong of *Strickland* because he is unable to show that Wright's decision fell below an objective standard of reasonableness.

2. Wright's representation did not result in prejudice to Riley.

Even if Wright's decision to forego investigating and presenting evidence of mental retardation was not objectively reasonable, Riley's petition still fails the second prong of *Strickland*. Riley is unable to show that prejudice resulted by his counsel's decision to not submit evidence that Riley had an I.Q. of 67. Borderline retardation is not always viewed as a mitigating circumstance. In *Smith v. Black*, this Court determined that an I.Q. test suggesting that a defendant falls within the "the upper borderline of mild retardation" does not amount to "any significant organic damage or

7

mental illness." 904 F.2d 950, 977-78 (5th Cir. 1990), *vacated on other grounds by* 503 U.S. 930 (1992). As a result, this Court opined that even if trial counsel chooses not to present evidence showing that a defendant has an I.Q. of 70, this choice would not give rise to a deficiency or prejudice to support a finding of ineffective assistance of counsel. *Smith*, 904 F.2d at 977-78; *see also Andrews v. Collins,* 21 F.3d 612, 624 (5th Cir. 1994) (upholding counsel's decision to not present evidence of borderline mental retardation where defendant presented evidence that his I.Q. was 68 at habeas hearing); *cf. Jones v. Thigpen*, 788 F.2d 1101, 1103 (5th Cir. 1986) (finding counsel ineffective for failing to present evidence of I.Q. score below 41). Riley thus fails to show how not presenting evidence of an I.Q. of 67 resulted in prejudice.

We therefore hold that the state habeas court decision was not unreasonable under the Supreme Court standards set forth in *Strickland*.

B.  Investigative funds under 21 U.S.C. § 848(q)

The district court properly denied Riley's counsel, Alexander Calhoun ("Calhoun"), funds to investigate Riley's claim on appeal. Section 848(q)(4)(B)(9) of Title 21 provides: "Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant . . . the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses . . . ." Under this statute, this Court requires Riley to show that he is indigent and that the requested services are "reasonably necessary" for his representation. *Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000); *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997). This Court has construed "reasonably necessary" to mean that a petitioner must demonstrate "a substantial need" for the requested assistance. *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000); *Fuller*, 114 F.3d at 502. A

8

petitioner cannot show a substantial need when his claim is procedurally barred from review. *Fuller,* 114 F.3d at 502.

Riley argues that he satisfied this "reasonably necessary" requirement. His current counsel, Calhoun, requested funds so that Calhoun could investigate Riley's background in order to prove that Riley's trial counsel was deficient in researching circumstances relevant to Riley's alleged mental retardation. The investigative assistance, Riley argues, would have enabled Calhoun to examine "unexplored grounds for mitigation."

Riley's argument fails under the state-exhaustion procedural bar. "[A] habeas petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court." *Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000) (quoting *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996)). Riley sought funding to investigate additional material evidence surrounding a claim on which the state habeas court had already ruled. The fruits of such an investigation would therefore have been procedurally barred. Accordingly, Riley failed to satisfy the "reasonably necessary" requirement of 21 U.S.C. § 848(q)(4)(B)(9). The district court did not abuse its discretion in denying Riley funding.

## IV. CONCLUSION

For the foregoing reasons, the district court's denial of Riley's habeas petition and the district court's denial of Riley's motion for funds under 21 U.S.C. § 848 are AFFIRMED.