United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 26, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-70015

DALE DEVON SCHEANETTE

Petitioner - Appellant

VERSUS

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division

Respondent - Appellee

Appeal from the United States District Court for the Northern
District of Texas, Fort Worth Division

Before JOLLY, DAVIS, and OWEN, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Convicted of capital murder and sentenced to death, Dale Devon
Scheanette ("Scheanette") petitions for a Certificate of
Appealability ("COA") from the district court's denial of federal
habeas corpus relief. Because we find that reasonable jurists
could not debate the propriety of the district court's decisions
regarding Scheanette's multiple alleged constitutional errors, we
deny Scheanette's application for a COA.

## I.   FACTS AND PROCEEDINGS

The district court summarized the facts in its opinion denying Scheanette's habeas corpus petition as follows:

On Christmas Eve of 1996, Norman and Brenda Norwood became worried about their twenty-year old niece, Wendie Prescott, when she failed to show-up for a planned shopping trip with her sister. Around 11:00 p.m., Norman went to Prescott's apartment, only to discover her naked body lying face down in a partially filled bathtub. Her neck, hands and feet were tied in duct tape, which trailed from her neck down behind her back to her hands and feet. The medical examiner believed that she had been bound in this fashion prior to death. The autopsy revealed that Prescott had been manually strangled, with the possibility that her immersion in the tub also played a role in her death. A sexual assault examination was conducted and sperm samples collected and preserved for DNA testing.

Though investigators found a high-quality dust print at Prescott's apartment, initial comparisons yielded no matches. In the summer of 2000, however, the print was resubmitted to the FBI computer system, which, through the use of new technology, was able to narrow the list of possible matches. One of the matches scored over 2500 points, almost a 1000 points more than the next highest score. A FBI analyst concluded the print found in Prescott's apartment matched the known print of Scheanette. This conclusion was later confirmed by two Arlington investigators. After obtaining a search warrant, officers obtained saliva samples from Scheanette. DNA testing matched the DNA extracted from these samples to the DNA extracted from Prescott's corpse with a statistical certainty of one in 763 million.

At the punishment phase, the State connected Scheanette to yet another capital murder, that of twenty-six year old Christine Vu.
. . . .

[The State also tied Scheanette to five brutal sexual assaults.]
. . . .

The   State   also   introduced   evidence   that,   while

2

incarcerated awaiting trial, jail guards found concealed in Scheanette's cell a contraband triangular piece of plexiglass that could have been used as a weapon. Finally, the State introduced evidence of a burglary conviction from 1999.

During the punishment phase, various family members and a chaplain testified on Scheanette's behalf. A retired employee of the Texas Department of Criminal Justice, S.O. Woods, also testified concerning the security measures taken in prison for handling violent inmates. Finally, Dr. Gilda Kessner testified concerning Scheanette's future dangerousness.[1]

In January 2003, a Texas jury convicted Scheanette of capital murder and sentenced him to death for the murder of Wendi Prescott while in the course of committing or attempting to commit sexual assault on her. The Texas Court of Criminal Appeals (the "TCCA") affirmed Scheanette's conviction and sentence.[2] The Supreme Court denied Scheanette's pro se petition for writ of certiorari in January 2005.[3]

Scheanette subsequently initiated state habeas proceedings. The trial court entered findings of fact and conclusions of law recommending the denial of state habeas relief. However, on April 13, 2005, the TCCA remanded Scheanette's case to the trial court for the development of additional facts pertaining to his

---

[1]Scheanette v. Dretke, No. 4:05-CV-718-A, Memorandum Opinion and Order (N.D. Tex. Apr. 10, 2006).

[2]Scheanette v. State, 144 S.W.3d 503 (Tex. Crim. App. 2004).

[3]Scheanette v. Texas, 543 U.S. 1059 (2005).

3

ineffective assistance of counsel claims.[4]

While his state application was pending before the TCCA, Scheanette filed a pro se federal habeas petition in the Eastern District of Texas. The case was transferred to the Northern District of Texas. The district court granted Director Dretke's motion to dismiss without prejudice so that Scheanette could exhaust all available state court remedies.[5]

After the TCCA denied all habeas relief,[6] Scheanette filed a federal habeas petition in the district court. The district court denied relief.[7] Scheanette filed a notice of appeal, which the district court construed as a request for certificate of appealability ("COA"), which was denied.[8] Scheanette now petitions this court directly for a COA.

## II. STANDARD OF REVIEW

Scheanette filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Accordingly, the petition is subject to the

---

[4]Ex parte Scheanette, No. WR-59466-01, 2005 WL 913120 (Tex. Crim. App. Apr. 13, 2005).

[5]Scheanette v. Dretke, No. 4:05-CV-489-A (N.D. Tex. Aug. 25, 2005).

[6]Ex parte Scheanette, No. WR-59466-01, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005).

[7]Scheanette v. Dretke, No. 4:05-CV-718-A, Memorandum Opinion and Order (N.D. Tex. Apr. 10, 2006).

[8]Scheanette v. Dretke, No. 4:05-CV-718-A, Order (N.D. Tex. Apr. 11, 2006).

4

requirements imposed by AEDPA.[9]  Under AEDPA, Scheanette must obtain a COA before an appeal can be taken to this court.[10]  In determining whether a COA should issue, we limit our examination to a "threshold inquiry into the underlying merit of [the petitioner's] claims."[11]  "This threshold inquiry does not require full consideration of the factual or legal basis adduced in support of the claims.  In fact, the statute forbids it."[12]

A COA will be granted if the petitioner makes "a substantial showing of the denial of a constitutional right."[13]  Meeting this standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[14]  At issue is the debatability of the underlying constitutional claim, but not the resolution of that debate.[15]

Where the district court dismisses the application based on

---

[9]See Lindh v. Murphy, 521 U.S. 320, 336 (1997).

[10]See 28 U.S.C. § 2253(c); see also Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

[11]Miller-El, 537 U.S. at 327.

[12]Id. at 337.

[13]28 U.S.C. § 2253(c)(2); e.g., Miller-El, 537 U.S. at 336; Slack v. McDaniel, 529 U.S. 473, 483 (2000).

[14]Miller-El, 537 U.S. at 336 (internal citation and quotations omitted); Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006).

[15]Miller-El, 537 U.S. at 342.

procedural grounds without reaching the prisoner's underlying constitutional claim(s), a COA should issue if the petitioner demonstrates both that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling <u>and</u> that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right.[16]  "Because the present case involved the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor."[17]

Under 28 U.S.C. § 2254(d), a federal court cannot grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[18]  "[A] determination of a factual issue made by a State court shall be presumed to be correct,"[19] and a federal habeas petitioner "has the burden of

---

[16]<u>Slack</u>, 529 U.S. at 478.

[17]<u>Hernandez v. Johnson</u>, 213 F.3d 243, 248 (5th Cir. 2000).

[18]28 U.S.C. § 2254(d).

[19] 28 U.S.C. § 2254(e)(1).

6

rebutting this presumption with clear and convincing evidence."[20]

## III. DISCUSSION

Scheanette requests a COA on seven separate claims. We review the claims in turn.

## A. Claims One and Two

Scheanette argues that his defense counsel were constitutionally ineffective because they called two punishment phase witnesses, Dr. Gilda Kessner ("Dr. Kessner") and S.O. Woods ("Woods"), whose testimony provided little or no benefit to the petitioner, but rather helped the State establish his future dangerousness.

To establish ineffective assistance of counsel, Scheanette must satisfy the two-prong test set forth in Strickland v. Washington.[21] First, Scheanette must show that his counsel's performance was deficient.[22] We determine whether counsel's performance was deficient "by examining whether the challenged representation fell below an objective standard of reasonableness."[23] "Strickland does not allow second guessing of trial strategy and must be applied with keen awareness that this is

---

[20]Hughes v. Dretke, 412 F.3d 582, 589 (5th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

[21]466 U.S. 668, 687 (1984).

[22]Id.

[23]Cotton v. Cockrell, 343 F.3d 746, 752 (5th Cir. 2003) (citing Kitchens v. Johnson, 190 F.3d 698, 701 (5th Cir. 1999)).

an after-the-fact inquiry."[24]  Therefore, Scheanette must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance.[25]

To prevail, Scheanette must also show that his counsel's deficient performance was prejudicial, i.e., that the errors were so serious as to "deprive [him] of a fair trial, a trial whose result is reliable."[26]  But because, as will be discussed immediately below, no reasonable jurist could debate the district court's conclusion that Scheanette's counsel rendered adequate performance, we will not consider whether the alleged errors Scheanette relies on could have prejudiced his defense.

In light of the horrendous evidence the state produced against Scheanette, defense counsel sought to offer mitigating evidence to support an argument that Scheanette would not pose a future danger if given a life sentence. Counsel presented testimony from Scheanette's sister, Scheanette's mother, and a chaplain concerning positive evidence of Scheanette's background and character. Defense counsel also presented the testimony of Dr. Kessner regarding risk assessment evidence, which focused on the statistically low probability of prison violence.  In defense counsel's "strategic view, evidence, such as risk assessment, that

---

[24]Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir. 2006).

[25]Strickland, 466 U.S. at 689.

[26]Id. at 687.

8

focused on statistically low prison violence, would enhance [the] theme that the jury would not have to kill" Scheanette.[27] On direct examination, Dr. Kessner testified that there was an 18.8% chance that Scheanette would commit acts of violence in prison, which was just over the standard base rate of 16.4% for all individuals serving life sentences for murder. Dr. Kessner also testified concerning Scheanette's decreased risk factors, such as his age, and remarked on Scheanette's good family support network, average intelligence, and vocational ability. Dr. Kessner noted that Scheanette was among other inmates when he was in county jail, and he did not exhibit assaultive behavior. In its closing arguments, the State argued that the 18.8% figure provided by Dr. Kessner is a "probability that the defendant would commit criminal acts of violence," as required by Tex. Code Crim. Proc. Ann. art. 37.071, § 2(b); and therefore, the jurors "know what the answer to the [future dangerousness] question is."

As additional mitigation evidence, defense counsel presented the testimony of Woods regarding institutional evidence, which emphasized the heightened security provided for prisoners such as Scheanette. Defense counsel "concurred with the leading capital litigators that Woods would appeal well to a practical juror who would be impressed with the professional expertise of the

---

[27]Affidavit of defense counsel, David A. Pearson.

Institutional Division at controlling life sentenced offenders."[28] On direct examination, Woods generally testified about how inmates are classified at the Texas Department of Criminal Justice ("TDCJ"). He also testified that, if sentenced to life in prison, Scheanette would likely be assigned to a high-risk "level-five" security institution. The State then used cross-examination to establish that a wide range of weapons are available to the inmates in the penitentiary system, and the penitentiary does not guarantee a violence-free environment. The prosecutor also elicited testimony that a shank found in Scheanette's cell at the Dallas County jail is a stabbing/puncture instrument.[29] On re-direct, Woods testified that the shank led to a disciplinary infraction which must be reported under state law when Scheanette is transferred such that the classification committee would take it into consideration.

The TCCA reviewed these claims on direct appeal and found the

---

[28]Affidavit of defense counsel, David A. Pearson.

[29]Scheanette also complains of the following testimony elicited on cross-examination:

> Q. [The Prosecutor]: From your review of the reports, did it appear to you that Dale Scheanette had exercised a level of planning in each of these cases?
>
> A. [Woods]: Very much so.
>
> Q. [The Prosecutor]: Just like the Texas Seven?
>
> A. [Woods]: Very similar.

record insufficient to support a claim of ineffective assistance of counsel.[30]  In reaching its conclusion, the TCCA presumed that defense counsel acted pursuant to a reasonable trial strategy.  On state habeas review, the convicting court made findings of fact and conclusions of law concerning Scheanette's allegations of ineffective assistance of counsel and found that defense counsel had "sound and strategic tactical reasons for introducing" the expert testimony of Woods and Dr. Kessner.  The TCCA adopted all of the trial judge's findings and conclusions.[31]

After considering Scheanette's arguments, the federal district court also denied relief, concluding that Scheanette failed to meet either Strickland prong.  Regarding deficient performance, the court concluded that trial counsel objectively employed a reasonable strategy and it was "at a loss as to what other types of evidence . . . counsel could have introduced on his behalf to rebut the existing evidence as to his future dangerousness," given the State's evidence establishing Scheanette as a brutal murderer and serial rapist.

The state court reasonably concluded that Scheanette's defense counsel did not render ineffective assistance by offering the punishment phase testimony of Woods and Dr. Kessner.  "[S]trategic choices made after thorough investigation of law and facts relevant

---

[30]Scheanette v. State, 144 S.W.3d at 510.

[31]Ex parte Scheanette, No. WR-59466-01, 2005 WL 3429304.

11

to plausible options are virtually unchallengeable."[32] In light of the thorough investigation conducted by Scheanette's trial counsel,[33] we conclude that these carefully considered tactical decisions introduced at the punishment phase were objectively reasonable. Scheanette has not demonstrated that the state court's decision is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, the district court's assessment was not debatable.

### B.  Claim Three

For the first time, Scheanette argues that his defense counsel were ineffective for failing to object to an instruction limiting the statutory effect of the mitigation special issue.[34]

We need not consider whether jurists of reason would find the

---

[32]Wiggins v. Smith, 539 U.S. 510, 521 (2003) (internal citation and quotations omitted).

[33]For example, defense counsel employed a mitigation specialist, and obtained mental health and juvenile records in an attempt to uncover potential mitigation evidence. Defense counsel Pearson attended a seminar focused on presenting risk assessment evidence and personally observed the use of such risk assessment evidence in capital cases. In addition, a featured speaker at the seminar recommended that litigators present the institutional evidence offered by Woods and Pearson knew that two defense attorneys had been successful in obtaining a life sentence in a death penalty case using similar evidence. In preparation for Woods's testimony, Pearson read a transcript of Woods's testimony in another capital case and also personally observed Woods's testimony in a capital case.

[34]Specifically, the jury was instructed that:

> In deliberating on Special Issue No. 1 and Special Issue No. 2, the Jury shall consider all of the evidence admitted at the guilt or innocence phase and the punishment phase, including evidence of the defendant's background or character or circumstances of the offense that militates for or mitigates against imposition of the death penalty.

12

district court's resolution of this issue debatable because Scheanette did not first raise this claim in the district court.[35] We have stated that "[a] district court must deny the COA before a petitioner can request one from this court."[36] Thus, prior to appellate review, the district court must "deny COA as to each issue presented by the applicant."[37] Because Scheanette failed to seek a COA from the district court on this issue, we will not consider the issue.[38]

## C. Claim Four

In his fourth claim, Scheanette argues that the trial court violated his Eighth and Fourteenth Amendment rights when its instruction went beyond the language of the mitigation special issue (Special Issue No. 2). Specifically, the jury was instructed that:

> In deliberating on Special Issue No. 1[39] and Special Issue No. 2, the Jury shall consider all of the evidence admitted at the guilt or innocence phase and the punishment phase, including evidence of the defendant's

---

[35]See Brewer v. Quarterman, 466 F.3d 344, 346 (5th Cir. 2006).

[36]Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1998) (internal citation and quotations omitted).

[37]Id.

[38]Scheanette's claim also fails on the merits because the two-prong Strickland test is not satisfied. Assuming that prong one of Strickland is satisfied by trial counsel's failure to object to the instruction, Scheanette was not prejudiced because the instruction gave adequate guidance to the jury to consider both aggravating and mitigating evidence when determining its response to the special issues.

[39]Special Issue No. 1 is the future dangerousness special issue.

13

background or character or circumstances of the offense that militates for or mitigates against imposition of the death penalty.

Scheanette argues that, contrary to the instruction, the statute requiring the jury to consider the special mitigation issue prohibits the jury - in its consideration of this issue - from considering evidence that militates <u>for</u> the death penalty.

Tex. Code Crim. Proc. art. 37.071, § 2(e)(1) requires Texas juries in capital cases to answer the following question on mitigation:

Whether, <u>taking into consideration all of the evidence,</u> including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is sufficient <u>mitigating circumstance or circumstances</u> to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed.[40]

On direct appeal, Scheanette argued, as he does now, that the charge in question violated his Eighth and Fourteenth Amendment rights.[41] However, before the district court, Scheanette argued violations of the Sixth and Fourteenth Amendments. Because Scheanette did not first request a COA from the district court on Eighth Amendment grounds, we will not consider his claim in that regard.[42]

Scheanette's Fourteenth Amendment claim is procedurally

---

[40]Tex. Code Crim. Proc. art. 37.071, § 2(e)(1) (emphasis added).

[41]<u>See</u> <u>Scheanette v. State</u>, 144 S.W.2d at 507.

[42]<u>See</u> <u>Whitehead</u>, 157 F.3d at 388.

14

barred. A federal habeas court "will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground."[43] Scheanette failed to object to the jury charge at the time of trial. We have recognized a federal petitioner's failure to comply with the Texas contemporaneous objection rule as an adequate and independent state procedural bar to federal habeas review.[44]

On direct appeal, the TCCA specifically stated that because Scheanette failed to object to the jury instruction, he would have to show egregious harm from any error in the instruction in order to obtain relief.[45] The TCCA found no harm from the instruction because the jury was entitled under the law to consider all of the evidence in determining its answer to the mitigation issue. For this reason, the TCCA denied Scheanette's claim. On state habeas review, the TCCA adopted the trial court's conclusion that Scheanette's claim was "not cognizable because the issue[] had already been raised and rejected on direct appeal."[46] After recognizing that Scheanette failed to object to the jury charge in

_____

[43]Busby v. Dretke, 359 F.3d 708, 718 (5th Cir. 2004)(citing Coleman v. Thompson, 501 U.S. 722, 729-32 (1991)).

[44]See Rowell v. Dretke, 398 F.3d 370, 375 (5th Cir. 2005); Graves v. Cockrell, 351 F.3d 143, 152 (5th Cir. 2003).

[45]Scheanette v. State, 144 S.W.3d at 507.

[46]See Ex parte Scheanette, No. WR-59466-01, 2005 WL 3429304. This issue was designated as points of error twenty-one and twenty-two in Scheanette's state habeas application.

15

the trial court, the district court agreed with the TCCA that any improper language in the jury instruction did not harm Scheanette, and thus, concluded that Scheanette failed to show that the TCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

As a result, Scheanette's Fourteenth Amendment challenge to the jury instruction is procedurally barred unless Scheanette can show cause and actual prejudice for the default or that failure to address the merits of the procedurally defaulted claim will work a fundamental miscarriage of justice.[47]  Scheanette has failed to show cause for his counsel's failure to object.[48]  In addition, even assuming Scheanette could show cause for his default, he is unable to show any resultant prejudice because, as stated by the TCCA on direct appeal:

> Article 37.071, § 2(e)(1) directs the court to instruct the jury to "tak[e] into consideration <u>all of the evidence</u>" when determining whether there are sufficient mitigating circumstance[s] to warrant the imposition of a sentence of life imprisonment. By its plain language, the statute requires the jury to look at <u>all</u> of the evidence and not just evidence a juror might consider to be mitigating.[49]

---

[47]<u>Coleman v. Thompson</u>, 501 U.S. at 750.

[48]Scheanette now raises a <u>Strickland</u> claim regarding this issue.  However, he does not allege his counsel's ineffectiveness as cause to excuse the procedural default.  Regardless, a constitutional claim alleged as cause for a procedural default must itself be exhausted; and, as previously discussed, Scheanette's ineffective assistance of counsel claim in this regard is unexhausted.  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000).

[49]<u>Scheanette v. State</u>, 144 S.W.3d at 507-508 (emphasis in original).

16

Scheanette has offered no contrary clearly established federal law to dispute this finding. Furthermore, Scheanette presents no evidence indicating that our dismissal of this claim for procedural default would work a "fundamental miscarriage of justice." As a result, reasonable jurists could not debate whether the district court was correct in its ruling of procedural default.[50]

### D. Claim Five

Scheanette argues that the mitigation instruction was not effective in telling the jury how to consider the mitigating evidence because it sent "mixed signals" in violation of the Eighth Amendment as interpreted in <u>Penry v. Johnson</u>[51] ("<u>Penry II</u>"). More specifically, Scheanette argues that the amended jury instruction prevented the jury from considering and giving effect to any mitigating evidence when answering the mitigation special issue, and that any mitigating evidence could not be given effect in the future dangerousness special issue.

On direct appeal, the TCCA noted that it had "previously addressed and rejected this claim," and denied Scheanette relief.[52]

---

[50]Even if Scheanette's claim was not procedurally barred, the state court's resolution of the issue raised by Scheanette did not involve an unreasonable application of federal law. No clearly established federal law supports Scheanette's argument that the jury is precluded from considering all of the evidence when determining its answer to the mitigation special issue, and we have never adopted such a rule. At most, the judge's amendment to the mitigation instruction amounts to a violation of the Texas statute, and not a constitutional violation.

[51]532 U.S. 782 (2001).

[52]<u>Scheanette v. State</u>, 114 S.W.3d at 506.

On state habeas review, the TCCA adopted the trial court's conclusion that this claim was not cognizable because the issue was already raised and rejected on direct appeal.[53] The federal district court concluded that Scheanette "failed to show that the complained-of instructions were contrary to, or involved an unreasonable application of, clearly established federal law."[54] Specifically, Scheanette failed to persuade the court that the jury was not able to consider and give effect to his mitigating evidence, as required by Penry II.[55] Reasonable jurists could not debate the district court's decision.

In Penry II the Supreme Court reiterated its previous holding in Penry v. Lynaugh[56] ("Penry I") that the key is "that the jury be able to 'consider and give effect to [a defendant's mitigating] evidence in imposing sentence.'"[57] In order to grant relief on a Penry I claim, this court must determine: "(1) whether the mitigation evidence has met the low threshold for relevance, and, if so, (2) that the evidence was beyond the effective scope of the

---

[53]Ex parte Scheanette, No. WR-59466-01, 2005 WL 3429304 (Tex. Crim. App. Dec. 14, 2005).

[54]Scheanette v. Dretke, No. 4:05-CV-718-A, Memorandum Opinion and Order (N.D. Tex. Apr. 10, 2006).

[55]Id.

[56]492 U.S. 302 (1989).

[57]Penry II, 532 U.S. at 797 (citing Penry I, 492 U.S. at 319) (emphasis in original).

18

jury."[58]

The Supreme Court defined relevant mitigating evidence as "evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value."[59] Scheanette presented testimony from Dr. Kessner and from Woods, both concerning Scheanette's future dangerousness; and testimony from Scheanette's sister, a chaplain, and Scheanette's mother to provide positive evidence of Scheanette's background and character. "Relevant mitigating evidence does not have to be linked to his conduct, but only show that it could lead a jury to find that a sentence other than death is warranted."[60] Applying the low threshold articulated by the Supreme Court in Tennard v. Dretke,[61] it is clear that the evidence submitted by Scheanette constitutes relevant mitigating evidence. Thus, Scheanette must have been – and was – allowed to present this evidence to the jury.

We now turn to Scheanette's contention concerning the constitutionality of the jury instruction given by the trial judge during the sentencing phase. A mere possibility that the jury was

---

[58]Bigby v. Dretke, 402 F.3d 551, 564-65 (5th Cir. 2005) (internal citation and quotations omitted).

[59]Tennard v. Dretke, 542 U.S. 274, 284 (2004) (internal citation and quotation omitted).

[60]Coble v. Dretke, 444 F.3d 345, 360 (5th Cir. 2006).

[61]542 U.S. 274.

precluded from considering mitigating evidence does not establish Penry I error.[62] "[T]he proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[63]

We conclude that the jury was able to consider and give effect to Scheanette's relevant mitigating evidence. In Scheanette's case, the jury was required to answer the following special issues:

### Special Issue No. 1

Do you find the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society?

### Special Issue No. 2

Taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character or background, and the personal moral culpability of the defendant, do you find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

Unlike Penry II, the trial judge's instruction in this case did not suggest to the jury that it should provide false answers to either of these special issues. Scheanette's claim that the instruction in effect "nullified" the mitigation special issue is unsupported. As discussed above, in determining its answer to the

---

[62]See Boyde v. California, 494 U.S. 370, 380 (1990).

[63]Id.; see Saffle v. Parks, 494 U.S. 484, 490-92 (1990).

mitigation issue, the jury was entitled to consider all of the evidence. In addition, we have no reason to believe that the jury was confused or misled in answering the mitigation special issue.

Moreover, even assuming that Scheanette is correct that the instruction "nullified" the mitigation special issue, Scheanette's mitigating evidence could be considered and given effect under the future dangerousness special issue.[64] Specifically, the testimony of Woods addressing the rigorous security measures at TDCJ and Dr. Kessner regarding Scheanette's relative likelihood of committing a serious violent act in prison over the course of a capital life term could be fully considered within the future dangerousness special issue. In addition, Scheanette's familial and chaplain mitigation testimony is good character evidence, recognized as falling within the future dangerousness special issue.

In sum, the state court's decision was neither contrary to,

---

[64]See Johnson v. Texas, 509 U.S. 350, 368 (1993) ("We believe that there is ample room in the assessment of future dangerousness for a juror to take account of the difficulties of youth as a mitigating force in the sentencing determination."); Graham v. Collins, 506 U.S. 461, 475-76 (1993) (holding that Texas special issues permitted jurors to consider mitigating evidence of youth, family background and positive character under future dangerousness issue); Franklin v. Lynaugh, 487 U.S. 164, 178 (1988) (plurality opinion) (finding that petitioner's evidence of a good disciplinary record during his period of incarceration was "fully considered by the jury when it was asked to answer the [future dangerousness] [i]ssue"); see, e.g., Newton v. Dretke, 371 F.3d 250, 256-257 (5th Cir. 2004) (youth, good character, church attendance, cooperation with police, unfaithful/drug dealing spouse, and impoverished background); Beazley v. Johnson, 242 F.3d 248, (5th Cir. 2001) (good character); Boyd v. Johnson, 167 F.3d 907, 912 (5th Cir. 1999) (positive character traits); James v. Collins, 987 F.2d 1116, 1121-22 (5th Cir. 1993) (cooperation with police, remorse, impoverished and abusive family history, positive familial ties despite troubled upbringing); Barnard v. Collins, 958 F.2d 634, 640-41 (5th Cir. 1992) (good character, including evidence of carpentry skills, work history, and familial responsibility and support).

21

nor an unreasonable application of, federal law. As a result, reasonable jurists would not debate the district court's resolution of this issue.

## E. Claim Six

In claim six, Scheanette argues that his death sentence offends due process of law because the future dangerousness issue dilutes the State's burden of proof and fails to define "probability." The future dangerousness issue instructed the jury to answer the following question:

> Do you find from the evidence <u>beyond a reasonable doubt</u> that there is a <u>probability</u> that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society?[65]

On state habeas review, the TCCA adopted the findings of the state trial court that this claim is procedurally defaulted because Scheanette failed to raise the claim on direct appeal.[66] Procedural default aside, the state trial court further found that state law precedent precluded relief.

The district court agreed with the TCCA that this claim was procedurally defaulted because Scheanette did not raise the claim on direct appeal and Scheanette failed to show cause and prejudice for his default or that failure to consider this claim would result in a fundamental miscarriage of justice. The district court also

---

[65]Tex. Code Crim. Proc. art. 37.071, § 2(b)(1) (emphasis added).

[66]Ex parte Scheanette, No. WR-59466-01, 2005 WL 3429304.

22

addressed the merits of Scheanette's claim, concluding that the state court's substantive resolution of the issue did not involve an unreasonable application of federal law because submission of the future dangerousness issue to a jury in a capital case had been specifically held constitutional by the Supreme Court, and thus, acceptance of Scheanette's argument was barred by Teague v. Lane.[67] Moreover, the court noted that this court has "repeatedly rejected attacks on a court's failure to define 'probability' in this context on the ground that such term is not constitutionally vague."

Reasonable jurists could not debate the district court's dismissal of Scheanette's claim on grounds of procedural default. Texas law requires that a petitioner must raise a claim on direct appeal before it can be raised on state habeas,[68] and this rule is an "adequate state ground capable of barring federal habeas review."[69] In addition, the Texas court's alternative resolution of this claim was neither contrary to, nor an unreasonable application of, federal law. The future dangerousness issue has been held constitutional by the Supreme Court[70] and we have

---

[67]489 U.S. 288 (1989).

[68]See Ex parte Townsend, 137 S.W.3d 79, 81-82 (Tex. Crim. App. 2004); Ex parte Nelson, 137 S.W.3d 666, 668 (Tex. Crim. App. 2004).

[69]See Busby v. Dretke, 359 F.3d at 719.

[70]Jurek v. Texas, 428 U.S. 262 (1976); see Rowell v. Dretke, 398 F.3d at 379.

repeatedly held that the term "probability" as used in the Texas special issue is not so vague as to require additional instructions (such as definition by the court).[71]  As a result, reasonable jurists could also not debate the district court's dismissal of Scheanette's claim on substantive grounds.

### F. Claim Seven

Lastly, Scheanette relies on <u>Apprendi v. New Jersey</u>[72] and <u>Ring v. Arizona</u>[73] to argue that the Texas mitigation special issue is unconstitutional because it does not require the prosecution to prove the nonexistence of mitigating factors beyond a reasonable doubt.[74]

On direct appeal, the TCCA denied relief on this claim, finding that it had "previously addressed and rejected this argument."[75]  On state habeas review, the TCCA adopted the state trial court's conclusions that this claim be denied because it had

---

[71]<u>See</u>, <u>e.g.</u>, <u>Woods v. Johnson</u>, 75 F.3d 1017, 1033-34 (5th Cir. 1996); <u>James v. Collins</u>, 987 F.2d at 1120 & n.5.

[72]530 U.S. 466 (2000).

[73]536 U.S. 584 (2002).

[74]In particular, Scheanette asserts violations of the Sixth, Eighth, and Fourteenth Amendments.  Scheanette refers to a Fifth Amendment violation in the title of this claim, but refers to violations of the Sixth, Eighth, and Fourteenth Amendments in his closing remarks.  If Scheanette is now arguing a Fifth Amendment violation, Scheanette's Fifth Amendment claim is waived because he did not seek a COA from the district court on this basis.  <u>See</u> <u>Brewer v. Quarterman</u>, 466 F.3d at 346.

[75]<u>Scheanette v. State</u>, 144 S.W.3d at 505 (citing <u>Hankins v. State</u>, 132 S.W.3d 380, 386 (Tex. Crim. App. 2004)).

already been raised and rejected on direct appeal; and because the TCCA had already ruled on and rejected this claim.  The district court also denied relief on this claim, concluding that because neither <u>Apprendi</u> nor <u>Ring</u> require a mitigating factor to be established beyond a reasonable doubt, Scheanette failed to identify any erroneous or unreasonable application of clearly established federal law.

Reasonable jurists would not debate the district court's dismissal of this claim because it has been previously rejected in both state[76] and federal court, and is not supported by Supreme Court authority.

We have specifically held that the Texas death penalty scheme did not violate either <u>Apprendi</u> or <u>Ring</u> by failing to require the state to prove beyond a reasonable doubt the absence of mitigating circumstances.[77]  In <u>Granados v. Quarterman</u>, we stated that "the state was required to prove beyond a reasonable doubt every finding prerequisite to exposing [the defendant] to the maximum penalty of

---

[76]The TCCA has previously remarked that "the burden is implicitly placed upon the [defendant] to produce and persuade the jury that circumstances exist which mitigate against the imposition of death . . .;" and the court is "unaware of any constitutional requirement that the burden of proof regarding mitigating evidence be placed on either party, and to the extent that the burden is on [the defendant], we note that it is not unconstitutional to so place the burden." <u>Lawton v. Texas</u>, 913 S.W.2d 542, 557 (Tex. Crim. App. 1995) (en banc); <u>see</u> <u>Hankins</u>, 132 S.W.3d at 386.

[77]<u>Granados</u>, 455 F.3d at 536; <u>see</u> <u>Rowell</u>, 398 F.3d at 379 ("No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof.").

25

death,"[78] and we concluded that "a finding of mitigating circumstances reduces a sentence from death, rather than increasing it to death."[79]

In sum, the Texas court's denial of relief was neither contrary to, nor an unreasonable application of, federal law. As a result, reasonable jurists would not debate the district court's dismissal of Scheanette's claim.

IV.

For the foregoing reasons, we DENY the motion for a Certificate of Appealability.

MOTION DENIED.

---

[78]Granados, 455 F.3d at 536.

[79]Id. at 537.