# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-70020

JAMES EUGENE BIGBY,

      Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:08-CV-765

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

      Petitioner-appellant James Eugene Bigby was convicted of murder in Texas state court and sentenced to death. The district court denied his federal petition for habeas corpus, and he now requests a certificate of appealability from us. For the reasons that follow, we will deny the request.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-70020

## I.

On the evening of December 23, 1987 and into the early morning hours of the following day, operating under a belief that his friends were conspiring to thwart a pending workers' compensation claim he filed against his employer, Bigby murdered four people, including a four-month-old child whom he drowned in the sink. Bigby was tried in state court for capital murder. During a trial recess, he retrieved a revolver from the judge's bench, entered the judge's chambers, pointed the gun at the judge's head, and said, "Let's go." He was subdued, and trial proceeded. The jury convicted Bigby of capital murder and, in March 1991, sentenced him to death.

The Texas Court of Criminal Appeals affirmed Bigby's conviction and death sentence on direct appeal. *Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994). Bigby then filed a state application for habeas corpus, which the Court of Criminal Appeals denied. *Ex parte Bigby*, No. 34,970-01 (Tex. Crim. App. Feb. 4, 1998) (unpublished). Next, Bigby filed a federal petition for habeas corpus, which the United States District Court for the Northern District of Texas denied. *Bigby v. Johnson*, No. 4:98-CV-336 (N.D. Tex. Oct. 18, 1999) (unpublished). On appeal, this court affirmed Bigby's conviction but vacated his death sentence, holding that, under the reasoning of *Penry v. Johnson*, 532 U.S. 782 (2001) (*Penry II*), the instructions to the jury were inadequate to allow a proper decision on capital punishment. *Bigby v. Dretke*, 402 F.3d 551, 572 (5th Cir. 2005).

The state court held a second sentencing trial in 2006. The prosecution's case for death focused on the facts of Bigby's crime, with the prosecutors stressing the deliberateness of it, and the attempted escape during the first trial. The prosecutors also presented evidence as to Bigby's substantial criminal history and other antisocial behavior. The defense's case attempted to show that Bigby's murders were the result of his mental illnesses and that,

No. 13-70020

during his subsequent fifteen years of incarceration, he had found religion, had changed in other meaningful respects, and no longer presented a threat of dangerousness.  The jury sided with the prosecution and again sentenced Bigby to death.

The Court of Criminal Appeals affirmed the sentence and denied Bigby's state application for habeas corpus.  *Bigby v. State,* No. AP-75,589, 2008 WL 4531979 (Tex. Crim. App. Oct. 8, 2008) (unpublished); *Ex parte Bigby,* No. WR-34,970-02, 2008 WL 5245356 (Tex. Crim. App. Dec. 17, 2008) (unpublished).  Bigby filed his second federal petition for habeas corpus on April 14, 2010, and the district court denied it and declined to issue a certificate of appealability on April 5, 2013.  *Bigby v. Thaler*, No. 4:08-CV-765, 2013 WL 1386667 (N.D. Tex. Apr. 5, 2013).  Bigby now requests a certificate of appealability from us.

## II.

To obtain a certificate of appealability, Bigby must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In determining whether the district court's denial of Bigby's habeas petition is debatable, we "must be mindful of the deferential standard of review the district court applied to [Bigby's] claims as required by [the Antiterrorism and Effective Death Penalty Act]."  *See Miniel v. Cockrell*, 339 F.3d 331, 336 (5th Cir. 2003).  Under that statute, the district court could have granted relief on Bigby's habeas claims only if he established that the state court's denial of those claims was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in

No. 13-70020

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Because this is a death penalty case, any doubts as to whether the certificate of appealability should issue must be resolved in Bigby's favor. *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005).

## III.

## A.

Bigby's first claim is that his attorneys during the second sentencing trial provided ineffective assistance of counsel under the Sixth Amendment when they did not present certain evidence about Bigby's family history to the jury. To succeed on this claim, Bigby must show (1) that the representation of his counsel fell below an "objective standard of reasonableness," and (2) that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). We need not address whether the representation of Bigby's attorneys was deficient in the manner Bigby charges, because, that issue aside, it is clear that Bigby cannot show prejudice. *See Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014) ("Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong.").

In the context of this case, prejudice means that, but for the failure to present the evidence that Bigby argues should have been presented, there is a "reasonable probability" that Bigby would have received a life sentence rather than death. *See Porter v. McCollum*, 558 U.S. 30, 41 (2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694). "To assess that probability, we consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation."

4

No. 13-70020

*Porter*, 558 U.S. at 41 (citation, internal quotation marks, and alteration omitted).

We can divide the mitigation evidence Bigby adduced in his habeas proceedings into three general categories:

First, there is evidence about Bigby's family history that, as far as we can tell, has no bearing on Bigby's moral culpability and is irrelevant as to mitigation, such as, for one example, information about the work history of Bigby's grandfather. *Cf. Tennard v. Dretke*, 542 U.S. 274, 284 (2004) ("Relevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value.") (citation omitted).

Second, and comprising the bulk of Bigby's habeas case, is evidence about his siblings that has indirect relevance as to him. This evidence shows that Bigby's mother did not raise his siblings, but rather gave them up to be raised by others. Although Bigby's mother did raise him, the abandonment of his siblings caused him to fear during his childhood that he too would be given up, he says. (Most of the argument about the siblings, however, focuses on aspects of their lives that seem irrelevant here, such as, for example, his sister's trouble in school, and his brother's "small mobile home." There is no explanation as to what bearing those facts have on Bigby's culpability.)

Third, there is evidence about Bigby's own troubled relationship with his mother. The problem with this aspect of Bigby's argument is, although it *describes* the relationship between Bigby and his mother as "sick," "inappropriate," "unhealthy," and otherwise problematic, there are scarce *concrete facts* in the record illustrating what those descriptors mean. There is evidence that Bigby's mother breastfed him long past the usual age, that she drank often (including, possibly, when she was pregnant with him), that she argued with him at times, that she had limited mobility and required certain

5

assistance, and that on more than one occasion she attempted suicide, but the record does not disclose details about these matters and how they affected Bigby. In short, this evidence about Bigby's relationship with his mother is relevant, but vague. (Bigby's evidence also says, we should note, that Bigby "felt that his mother loved him.")

This family history does not change the sentencing calculus in a meaningful sense. At trial, the prosecution argued the heinousness of Bigby's crime, stressing how he, in a methodical manner, went from house to house murdering one victim after another, including an infant whom he drowned in the sink. The prosecutor further stressed that Bigby, during his first sentencing trial, obtained a firearm and tried to escape. The image of Bigby presented to the jury was of a career criminal with extreme, antisocial behavior and a desire to, in his own words, "go out in a blaze of glory." Based on this, the jury concluded that Bigby deserved death. Given the sparse and opaque nature of the new evidence about Bigby's family, we cannot say that, had the jury been aware of it, it "might well have influenced the jury's appraisal of [Bigby's] moral culpability." *See Porter*, 558 U.S. at 41 (citation omitted). For these reasons, we conclude that reasonable jurists could not debate the district court's denial of Bigby's claim as to the mitigation evidence.[1]

---

[1] Bigby's brief contains several arguments, and fragments of arguments, related to mitigation that we do not think warrant further discussion here. For one, Bigby's brief states that, had the mental health experts who examined him been provided with his family history, their diagnoses "may have been different." This argument is speculative and unsupported by the evidence. Second, Bigby presents arguments about *how* his counsel should have presented the jury with the family history evidence, contending, for example, that visual aids would have been helpful. We think that the evidence at issue would not suffice to establish prejudice no matter what media may have been available to Bigby's attorneys. The brief contains other intermingled contentions about mitigation that do not warrant further analysis.

No. 13-70020

**B.**

Bigby's second claim is that his attorneys provided ineffective assistance of counsel under the Sixth Amendment during voir dire. This claim, however, is entirely conclusory. That is, Bigby states that his attorneys failed him, but he provides no specific explanation as to how they did so and what effect it had on his case. (Bigby's brief says that his attorneys failed "because they did not have an adequate understanding of [Bigby's] mitigation evidence," but that nebulous allegation hardly speaks for itself.) "This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983)). Given the absence of any showing of deficiency and prejudice, the *Strickland* requirements, reasonable jurists could not debate the district court's denial of this claim.

**C.**

Third, Bigby claims that the Texas death penalty statute is unconstitutional under the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because (1) the jury instruction suggests that the defendant must bear the burden of proving mitigation (rather than require the prosecution to prove a lack of mitigation beyond a reasonable doubt) and (2) the indictment does not allege the specific facts that the prosecution will present in support of death. The district court concluded that these arguments are foreclosed under this court's decisions in *Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007), and *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005). Bigby repeats the arguments he presented to the district court to us verbatim and does not attempt to argue that the district court's analysis was wrong. We do not think that reasonable jurists could debate the district court's conclusion.

No. 13-70020

## D.

Fourth, Bigby argues that, based on the evidence introduced at trial, the jury's determination of a probability that he would "commit criminal acts of violence that would constitute a continuing threat to society," *see* Tex. Crim. Proc. Code art. 37.071, § 2(b)(1), was irrational and should be reversed. *See Jackson v. Virginia*, 443 U.S. 307 (1979). The district court concluded that this claim was barred from federal court review under the doctrine of procedural default. *See Coleman v. Thompson,* 501 U.S. 722 (1991). Bigby, again, repeats the arguments he presented to the district court to us verbatim, and those arguments are all about the merits of the claim. Bigby makes no attempt to argue against the district court's procedural default ruling. We, therefore, need not address this claim any further.

## E.

Fifth, Bigby argues that the Texas death penalty scheme is unconstitutional for the reasons discussed in Justice Blackmun's dissenting opinion in *Callins v. Collins*, 510 U.S. 1141 (1994). Reasonable jurists could not debate the district court's conclusion that this claim is foreclosed under *Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005), a conclusion that Bigby, again, does not counter.[2]

## F.

Sixth, and finally, Bigby claims that the jury instructions in his case were invalid under *Penry II*, *supra*. Reasonable jurists could not debate the

---

[2] Bigby's brief presents this claim twice, once as "issue number five" and again as "issue number seven." It appears that Bigby's attorney accidentally copied and pasted this section of the brief under two different headings. We note, further, that Bigby presented one additional claim to the district court on which he has *not* requested a certificate of appealability. It appears likely that Bigby's attorney intended to copy and paste *that* claim into his brief rather than copy and paste the same claim twice as both "issue number five" and "issue number seven." Nevertheless, he has had months to notice and correct the error, and he has not, so we will not address this single claim that has not been presented to us.

No. 13-70020

district court's conclusion that the jury instructions in Bigby's second sentencing did not present the same problem as addressed in *Penry II*.

## IV.

For these reasons, the motion for a certificate of appealability is DENIED.