# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-70049

LINDA ANITA CARTY,

Petitioner - Appellant,

v.

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
No. 06-614

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

A Texas jury convicted and sentenced to death petitioner–appellant Linda
Anita Carty for the intentional murder of Joana Rodriquez during the course of
a kidnaping of Rodriguez and her newborn son. State appellate courts affirmed
the conviction and sentence and denied post-conviction relief. Carty then
brought this federal habeas petition under the Antiterrorism and Effective
Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. The district court denied

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this order should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

substantive relief, dismissed Carty's case, and denied a certificate of appealability ("COA") for most of her claims. It granted a COA for two substantive claims. Carty's appeal of those two claims is now before us, as is Carty's request for an additional COA for many of the other claims she unsuccessfully raised in the district court. We deny Carty's request for an additional COA, grant her request for oral argument regarding the two substantive claims, and reserve opinion on those claims until after oral argument.

## I. FACTS AND PROCEDURE

The district court's exhaustive opinion more than adequately documents the factual background and procedural development of this case. *See Carty v. Quarterman* (*Carty Federal Habeas*), No. 06-614, slip op. at 5–35 (S.D. Tex. Sept. 30, 2008). Here, we recite the facts and procedure in cursory form to provide a framework for our denial of an additional COA.

Carty, a foreign national citizen of St. Kitts and thus the United Kingdom, was indicted by a Texas grand jury for the kidnaping and intentional murder of Rodriguez. Although Carty originally hired her own attorney, when her family could not pay his fees, the Texas trial court appointed Jerry Guerinot and Wendy Akins to represent her (collectively, "trial counsel"). Trial counsel hired investigator John Castillo and psychologist Dr. Jerome Brown to aid Carty's defense.

The trial proceeded in two phases: guilt/innocence and punishment. During the guilt-innocence phase, the prosecution called, *inter alia*, Jose Corona, with whom Carty had previously resided and who may have been Carty's common-law husband; Charlie Mathis, an agent of the Drug Enforcement Agency and for whom Carty had previously worked as an informant; and Josie Anderson, Marvin Caston, Chris Robinson, and Zebediah Combs, all of whom had some role in the kidnaping, although the parties currently contest their statuses as accomplices. The jury returned a verdict of guilty on the charge of

2

capital murder. During the subsequent punishment phase, Dr. Brown testified on behalf of Carty, as did members of her family. The jury answered all three of Texas's "special issues" in favor of sentencing Carty to death.

The Texas Court of Criminal Appeals affirmed Carty's conviction and sentence. *See Carty v. State*, No. 74295, 2004 WL 3093229 (Tex. Crim. App. Apr. 07, 2004). Carty then applied for state post-conviction relief. Carty raised a few of her presently asserted claims in her initial application for post-conviction relief but most others in her Further Additional Response (her third amended response to the government's answer). The parties dispute whether they—along with the state habeas court—agreed to permit Carty to raise new claims in that response. The state habeas court reviewed the claims she raised in her initial application and recommended that the Court of Criminal Appeals deny those claims, *see Ex Parte Carty*, No. 877592-A, order (Tex. Dist. Ct. Dec. 2, 2004), a recommendation that the Court of Criminal Appeals adopted, *see Ex Parte Carty*, No. WR-61,055-01, slip op. 2 (Tex. Ct. Crim. App. Mar. 2, 2005). Neither court addressed the claims she raised for the first time in her Additional Further Response.

Having found no success in state court, Carty then filed an application in federal district court for a writ of habeas corpus under § 2254. Carty presented approximately twenty issues to the district court, which concluded that Carty failed to raise a triable issue of her entitlement to relief, granted the state's motion for summary judgment, and dismissed the case. *See Carty Federal Habeas*, No. 06-614, slip op. at 142. Carty then moved for a COA. The district court granted Carty a COA on whether she failed to exhaust the claims that she raised for the first time in her Further Additional Response and on whether trial counsel rendered ineffective assistance by failing to notify Corona of his spousal privilege and by failing to produce more mitigation evidence during the punishment phase of trial. It denied a COA for all other claims. *See Carty v. Quarterman* (*Carty COA*), No. 06-614, slip op. at 2–3 (S.D. Tex. Dec. 16, 2008).

3

Carty now appeals the claims for which the district court granted her a COA and moves us to grant a COA on her additional claims. At this time, we rule only on her motion for an additional COA and deny it.

## II. STANDARDS OF REVIEW

Carty's motion is governed by AEDPA. Under AEDPA, a state habeas petitioner may appeal a district court's dismissal of his petition only if the district court or the court of appeals first issues a COA. 28 U.S.C. § 2253(c)(1)(B); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (describing a COA as a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners"). In determining whether to grant a petitioner's request for a COA, we limit our "examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336.

We will grant a request for a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Typically, where the district court denies a habeas petition at least in part on procedural grounds without reaching the applicant's underlying constitutional claim, or by reaching the underlying constitutional claim by denying it in the alternative, "a COA should issue when the [applicant] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. In this case, the district court concluded that the claims that Carty raised for the first time in her Further Additional Response were not exhausted in state court, a procedural ruling precluding relief on those claims; however, it granted a COA for that ruling. *See Carty COA*, No.

4

06-614, slip op. at 2 ("[G]iven the complexity of the record and the intricacies of Texas habeas law, the [district court] finds that the exhaustion issue 'deserves encouragement to proceed further.' The [district court], therefore, will grant a COA on the question of whether [Carty] sufficiently exhausted state court remedies.").[1] Thus, in order to grant a COA for one of Carty's additional substantive claims, we must conclude only that Carty has demonstrated the threshold showing for that substantive claim.[2] *See Miller-El*, 537 U.S. at 327. "Although the issuance of a COA 'must not be *pro forma* or a matter of course,' the petitioner satisfies the burden under § 2253(c) by 'demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (alteration in original) (quoting *Miller-El*, 537 U.S. at 337–38). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338. "[A]ny doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner." *Pippin*, 434 F.3d at 787.

In determining whether the district court's denial of Carty's petition for a COA on her additional claims was debatable, we must keep in mind the deferential standard of review that AEDPA requires a district court to apply to the state courts' rulings. *See Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005)

---

[1] Carty also seeks a COA for the district court's holding that the procedural default that resulted from her failure to exhaust was not subject to certain exceptions. Our disposition on Carty's appeal of the merits of the exhaustion issue will necessarily resolve the correctness of the district court's underlying procedural default holding. We consider as a separate matter whether to grant Carty's request for a COA on the applicability of exceptions to procedural default.

[2] Where a district court held that a different procedural bar applied to prevent consideration of the merits of one of Carty's claims, we apply the appropriate standard to both the procedural and substantive holdings. *See Slack*, 529 U.S. at 484.

("With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review."). Under AEDPA,

> a federal court is not to grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless it determines that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Pippin*, 434 F.3d at 787 (quoting 28 U.S.C. § 2254(d)(1)). Moreover, "'a determination of a factual issue made by a State court shall be presumed to be correct' unless the petitioner rebuts the presumption 'by clear and convincing evidence.'" *Id.* at 788 (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness attaches not only to explicit findings of fact, but also to 'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Id.* (quoting *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)).

## III. DISCUSSION

Carty requests a COA for numerous substantive claims and for her claim that exceptions to procedural default apply to the claims she raised for the first time in her Further Additional Response.

### A. Substantive claims

Carty raises six types of substantive challenges to her conviction or sentence.[3]

#### 1. Ineffective assistance of counsel

Carty contends that her trial counsel's assistance was ineffective. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the

---

[3] Carty presented the majority of these claims in her Further Additional Response, so there were no state court holdings to which the district court could apply the AEDPA-mandated standard of deference. *See* § 2254(d); *Pippin*, 434 F.3d at 787. We will note the few claims for which the state court provided a holding.

trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under the *Strickland* standard, the Sixth Amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms," by reference to "all the circumstances." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential" and must avoid second-guessing. *Id.* at 689. Prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.[4] In light of these standards, we now consider Carty's claims of ineffective assistance of counsel.

First, Carty alleges that trial counsel rendered ineffective assistance through deficient pre-trial preparation by (1) failing to interview Mathis; (2) failing to conduct inquiries of Carty's family and her life in St. Kitts; and (3) failing to interview and prepare to cross-examine state witnesses. Carty has failed to identify any testimony or information that trial counsel should have elicited from Mathis that would have been admissible, relevant, and non-cumulative. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it

---

[4] "It bears repeating that," where the state habeas court had the opportunity to rule on the petitioner's ineffective assistance of counsel claim, "the test for federal habeas purposes is *not* whether [the petitioner] made [the required] showing." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). "Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on [the petitioner's] IAC claim." *Id.*

7

would have altered the outcome of the trial."). She has similarly failed to show that testimony about her character from her family and distant acquaintances in St. Kitts was admissible and would have altered the guilt/innocence phase of trial.[5] Carty has additionally failed to show that Robinson and Combs, who were also charged with crimes, would have agreed to be interviewed by trial counsel or that they had any knowledge that was not otherwise disclosed to the jury during trial. Thus, the district court's holding—that trial counsel's performance did not fall below an objective standard of reasonableness—is not debatable by jurists of reason.

Second, Carty claims that trial counsel provided ineffective assistance by failing to call Dr. Brown to testify during the guilt/innocence phase and by failing to prepare him for cross-examination during the punishment phase. Carty has failed to show that Dr. Brown could have testified to his proffered opinions—that Carty's psychological profile did not fit the crime, that bandage scissors could not cut human flesh, and that Carty could not have passed the baby off as her own—during the guilt/innocence phase. Dr. Brown's opinion about Carty's psychological profile was not helpful to the jury because the jury was ultimately charged with deciding whether Carty kidnaped and killed Rodriguez with the requisite intent. Dr. Brown's analysis of her psychological profile based on later observations in a controlled setting would not have been helpful to the jury in determining whether she committed these crimes and, in any case, that Carty's later psychological profile suggested that she would not have committed these crimes pales in comparison to the substantial evidence that she did so. The only case relied upon by Carty permits testimony regarding the defendant's psychological profile in the punishment phase, not the guilt/innocense phase. *See Griffith v. State*, 983 S.W.2d 282, 288 (Tex. Crim.

---

[5] The district court granted a COA on whether trial counsel should have conducted more searching inquiries of Carty's family and of her life in St. Kitts to uncover mitigation evidence for use in the punishment phase of trial.

App. 1998). Next, Dr. Brown's opinion that bandage scissors could not cut human flesh was not relevant to the prosecution's use of that evidence—to provide evidence of Carty's willingness to do anything to kidnap the baby—and was not necessary because trial counsel presented that argument to the jury, which did not need expert testimony to reach that conclusion. Finally, that Carty could not have passed the baby off as her own due to its ethnicity is not relevant to whether she wanted to do so, ignores Corona's ethnicity, and ignores Carty's statements that Rodriguez was pregnant with Corona's child. Regarding cross-examination, an issue that Carty raised in state habeas court, she has failed to rebut the fact that Dr. Brown was familiar with her case, characteristics, and crimes, even if he did not know her theory of the case, and has failed to show any prejudice arising from the alleged deficient preparation. Carty has failed to rebut with clear and convincing evidence the state habeas court's finding that the prosecutor properly questioned Dr. Brown about hypothetical characteristics and has failed to show that the state habeas court unreasonably applied federal law to conclude that trial counsel was not ineffective during Dr. Brown's cross-examination. Overall, the district court's holding—that trial counsel's performance did not fall below an objective standard of reasonableness and did not prejudice the defense—is not debatable by jurists of reason.

Third, Carty contends that trial counsel rendered ineffective assistance by failing to present additional evidence that would have rebutted the special issue of future dangerousness. Carty's cursory argument on this issue fails to address any of the district court's comprehensive discussion of trial counsel's tactics in countering future dangerousness. *Cf. Williams v. Cain*, 125 F.3d 269, 278–79 (5th Cir. 1997) (holding that the trial attorney's tactic of not presenting certain evidence was not prejudicial to the defendant because it avoided harmful cross-examination). The district court's thorough holding—that trial counsel's

9

performance did not fall below an objective standard of reasonableness—is not debatable by jurists of reason.

Fourth, Carty asserts that trial counsel rendered ineffective assistance by failing to contradict the prosecution's evidence of the cause of Rodriquez's death, particularly as it relates to Carty's intent. The state habeas court denied Carty relief on this claim because, *inter alia*, trial counsel pursued a reasonable tactic of attacking the prosecution's expert and elicited beneficial testimony during cross-examination. The federal district court held that the state habeas court did not unreasonably apply federal law in denying Carty's claim. Carty now contends that had trial counsel pursued a different tactic, her defense would have been stronger. This argument is insufficient to show that reasonable jurists could debate the district court's conclusion. *See Schaetzle*, 343 F.3d at 444.

Carty maintains that trial counsel provided ineffective assistance by permitting the dismissal of over 80% of potential jurors, by inappropriately questioning potential jurors, and by failing to object to prosecutor and court statements during jury voir dire. Carty fails to show that the exclusion of potential jurors, trial counsel's statements, or trial counsel's decisions not to object gave rise to constitutional violations. *See, e.g.*, *Penry v. Johnson*, 532 U.S. 782, 801–02 (2001) ("The comments of the court and counsel during voir dire were surely a distant and convoluted memory by the time the jurors began their deliberations on [the defendant's] sentence."); *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993) ("[E]ven if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and 'juries are presumed to follow their instructions.'"); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("Because failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness, [the defendant] has not established deficient performance."). Thus, the district court's

holding—that trial counsel's performance did not fall below an objective standard of reasonableness—is not debatable by jurists of reason.

Sixth, Carty claims, as she did in state habeas court, that trial counsel rendered ineffective assistance by failing to advise her of her rights under the Vienna Convention on Consular Relations ("VCCR"), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. The district court held that whether Carty has an individually enforceable right under the VCCR is not clearly established for purposes of AEDPA; that Carty did not claim prejudice distinct from her unsuccessful claim of cumulative prejudice resulting from ineffective assistance of counsel; and that, in any case, Carty was not prejudiced because even when state officials notified her of VCCR-based rights, she failed to assert her foreign nationality. Carty is a citizen of St. Kitts and the United Kingdom. As such, Article 36 of the VCCR obligated the United States to notify the consular officers of St. Kitts and the United Kingdom of Carty's detention if she requested that they do so and also to inform her without delay of her notification rights. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 338–39 (2006). While the United States has undertaken that treaty obligation, the Supreme Court has not answered whether the VCCR creates rights enforceable by individuals. *See, e.g.*, *Medellín v. Texas*, --- U.S. ----, 128 S. Ct. 1346, 1357 n.4 (2008). Filling that void, we have previously held that "'Article 36 of the Vienna Convention does not create an individually enforceable right.'" *See, e.g.*, *Leal Garcia v. Quarterman*, --- F.3d ----, 2009 WL 1800141, at *2 n.19 (5th Cir. 2009) (quoting *Medellín v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004)). Carty nonetheless recites that "numerous other courts have held the opposite, that the Vienna Convention *does* create an individually enforceable right," *see id.* (citing, e.g., *Osagiede v. United States*, 543 F.3d 399, 409–10 (7th Cir. 2008), thus evidencing debate among jurists of reason. While there may be a vibrant debate in the courts of appeals about whether the VCCR conveys an individual right, that split does not mean that the state court judgment was "contrary to, or involved an unreasonable

11

application of, *clearly established Federal law, as determined by the Supreme Court of the United States.*" *See* § 2254(d)(1) (emphasis added). There can be no debate among jurists of reason that the purported individual right is not at this time clearly established by Supreme Court precedent. Yet, Carty continues to assert her VCCR claim by reference to various forms of purported ineffective assistance rendered by trial counsel, such as trial counsel's failure to make inquiries about her life on St. Kitts. Even assuming without deciding that trial counsel erred by failing to advise Carty of the availability of consular assistance, which may have resulted in such an inquiry, we conclude she has failed show that jurists of reason could debate that she has suffered any actionable prejudice resulting from trial counsel's deficient representation.[6] This is particularly true where she failed to assert her status as a foreign national after state officials notified her that foreign nationals would be permitted to contact their consuls under the VCCR. The district court's holding that the state habeas court's ruling was not contrary to clearly established federal law and the district court's conclusion that trial counsel's performance did not prejudice the defense are not debatable by jurists of reason.

Seventh, Carty asserts, as she did in state habeas court, that trial counsel should have objected when the prosecutor mentioned numerous baby items during his opening statement, items that the trial court later excluded from evidence, and also asserts that trial counsel should have sought instructions on and objected to evidence and argument relating to Anderson's, Caston's, and Combs's statuses as accomplice witnesses. The baby items were not excluded at trial until after opening arguments, and numerous other baby items were admissible evidence; thus, trial counsel did not act unreasonably, and the

---

[6] This conclusion is without prejudice to Carty's claim that trial counsel's alleged inadequate development of mitigation evidence constituted prejudicial deficient performance, an issue for which the district court granted a COA and that remains before us on appeal. To the extent Carty's VCCR claim is relevant to the development of facts supporting mitigation, we reserve judgment for our consideration of her pending appeal.

12

purported error was only cumulative of existing evidence. In addition, because questions existed as to the alleged accomplices' statuses and the issue was thus submitted to the jury with proper instructions, trial counsel was not deficient in handling the accomplice witnesses. *See Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) ("If the evidence is conflicting, it is proper to leave the question of whether an inculpatory witness is an accomplice witness as a matter of fact to the jury under instructions defining the term accomplice."). Thus, the district court's holding—that trial counsel's performance did not fall below an objective standard of reasonableness—is not debatable by jurists of reason, especially when viewed through AEDPA's multiple prisms.

Eighth, Carty argues that trial counsel should have resigned due to excessive workload and due to Carty's uncooperative interaction with trial counsel. The district court held that Carty has failed to raise an issue of constitutional magnitude, and that holding is not debatable by jurists of reason.

Carty's ninth and final ineffective assistance of counsel claim is that the cumulative errors of trial counsel deprived her of a fair trial. Carty preserved this claim in state habeas court. Most of the alleged errors that Carty recites did not constitute deficient performance and thus could not be the basis of a claim of cumulative prejudice. *See Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000). Moreover, without prejudice to the merits of Carty's pending appeal, the ostensible errors that did occur did not "'so infect[] the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc). Thus, jurists of reason could not debate the district court's holding denying Carty relief based on ineffective assistance due to the alleged cumulative errors of trial counsel.

Overall, we deny a COA for Carty's ineffective assistance of counsel claims.

## 2. Violation of VCCR-derived rights

Carty argues that the state erred by failing to inform her of her rights under the VCCR. As noted above, we have previously held that "'Article 36 of

13

the Vienna Convention does not create an individually enforceable right.'" *See Leal Garcia*, 2009 WL 1800141, at *2 n.19 (quoting *Medellín*, 371 F.3d at 280). Thus, as Carty at this time lacks an individual right, she has failed to show that jurists of reason could debate the validity of her claim. *See, e.g.*, *Cardenas v. Dretke*, 405 F.3d 244, 253 (5th Cir. 2005) ("[The petitioner's] claim fails because this court has determined in the past that the Vienna Convention does not confer individually enforceable rights."). In any case, even presuming a debate about whether the VCCR gives rise to an individually enforceable right, *see Leal Garcia*, 2009 WL 1800141, at *2 n.19, we do not find that the merits of Carty's claim could be debated by jurists of reason because the state habeas court found that, as a matter of fact, Carty was twice notified of the availability of VCCR-derived rights, and she denied that she was a foreign national on both occasions. Carty has not rebutted that conclusion with clear and convincing evidence. Because Carty has failed to show that jurists of reason would find it debatable whether her petition states a valid claim of the denial of a constitutional right based on the United States's obligations under the VCCR, we deny a COA.

### 3. Trial court errors

Carty asserts three errors by the trial court. Carty first argues that, during jury voir dire, the trial court improperly instructed the jury regarding capital murder by omitting reference to specific intent. *See* TEX. PENAL CODE § 19.03(a). Assuming that instruction was incorrect, "the question is . . . whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). In this case the ailing instruction did not infect the ensuing trial. The trial court properly instructed the jury regarding the requirement of intent immediately before submitting the case to the jury, the court also instructed the jury to resolve any doubt in favor of Carty when deciding between felony-murder and capital murder, and the parties argued at length about whether the prosecution had proven intent. *See Penry*, 532 U.S. at 801–02; *Zafiro*, 506 U.S. at 540.

14

Jurists of reason could not debate that Carty has failed to show a due process violation.

Carty next argues that the trial court erroneously instructed the jury about criminal acts of violence, again during jury voir dire. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(b)(1). Carty has failed to show that the trial court's instruction was contrary to state law (even without reference to the oft-stated principle that state-law errors typically do not give rise to a right to relief in federal habeas proceedings) and has not shown that the purported error made the fundamental fairness of trial debatable. *See Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (holding that state law violations must play "a crucial, critical, and highly significant role in the trial" to warrant habeas relief). Jurists of reason could not debate that Carty has failed to show a due process violation.

Carty finally argues that Texas law unconstitutionally permits the jury to answer "no" to the special mitigation question without concluding beyond a reasonable doubt that the state had shown that the facts do not warrant otherwise. Carty exhausted this claim in state court, and it is foreclosed by our precedent. *See Ortiz v. Quarterman*, 504 F.3d 492, 504–505 (5th Cir. 2007) ("The Texas death penalty scheme does not violate [Supreme Court precedent] by failing to require the State to prove beyond a reasonable doubt the absence of mitigating circumstances." (citing *Scheanette v. Quarterman*, 482 F.3d 815, 828–29 (5th Cir. 2007)). Again, jurists of reason could not debate that Carty has failed to show a due process violation.

Because Carty has failed to show that jurists of reason would find it debatable whether her petition states a valid claim of court error resulting in a constitutionally deficient trial, we deny a COA.

### 4. Insufficient evidence of intent to kill

Carty argues, as she did to the state habeas court, that the evidence proving her intent to kill was legally insufficient. Texas law premises a murder conviction on whether the actor "intentionally or knowingly causes the death of

15

an individual." TEX. PENAL CODE § 19.02(a)(1); *see Moreno v. Dretke*, 450 F.3d 158, 172 (5th Cir. 2006). Carty contends her statements—for example, that she wanted to cut the baby from Rodriguez's body—were insufficient to show intentional conduct because the baby was already born at the time of Rodriguez's murder, the scissors Carty intended to use were not capable of the abhorrent task, and she accomplished Rodriguez's murder by the alternative method of suffocation. Carty's statements did nothing more than evidence her willingness and desire to kill Rodriguez to accomplish the kidnaping of Rodriguez's baby, and the state offered sufficient evidence that, when viewed in the light most favorable to the it, *see Jackson v. Virginia*, 443 U.S. 307 (1979), proved that, as the state habeas found, "placing a person face down in the trunk, taping that person's hands, feet, and mouth, and then placing a plastic bag over that person's head . . . show[s] an intent to kill or cause serious bodily injury." Carty has failed to show that jurists of reason could debate whether the state habeas court reasonably applied federal law; we deny a COA.

### 5. Prosecutorial misconduct

Carty asserts two claims of prosecutorial misconduct. "Prosecutorial misconduct is not a ground for relief unless it casts serious doubt upon the correctness of the jury's verdict." *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001). Carty first asseverates that the prosecutor should have notified Corona of his right not to testify against Carty because she was his common-law wife. Carty has failed to show prosecutorial misconduct in putting Corona on the stand to testify. *See Benitez v. State*, 5 S.W.3d 915, 918–19 (Tex. App.—Amarillo 1999, pet. refused) ("[C]alling the spouse is not *ipso facto* error. [T]he State has no duty to prove that she testified voluntarily."). Nor has Carty shown the marital privilege is a constitutionally derived rule. *See Port v. Heard*, 764 F.2d 423, 430 (5th Cir. 1985) ("[T]he marital privilege has never been placed on a constitutional footing."). While it is debatable in fact whether Corona was

Carty's common-law husband, reasonable jurists could not debate the absences of a constitutional violation by the prosecutors in putting Corona on the stand.

Carty next maintains that the prosecutors incorrectly argued that Anderson, Caston, and Combs were not accomplices because they were not present during the kidnaping and murder. *See Singletary v. State*, 509 S.W.2d 572, 575 (Tex. Crim. App. 1974). She also argues that the prosecutors misstated the law by asserting that corroboration required only evidence that the crime occurred. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14.[7] For alleged misconduct based on the prosecutor's argument to the jury, an applicant is entitled to relief where "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The district court held that Carty did not object to the prosecutor's comments at trial, subjecting these errors to procedural default under Texas's contemporary objection rule. *See, e.g.*, *Barrientes v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000). Carty has offered no challenge to that conclusion, and it is not debatable by jurists of reason. The district court alternatively held that the instruction by the trial court provided the jury with adequate guidance to overcome any misstatement by the prosecutor and that any misstatement did not cast serious doubt upon the jury's verdict. *See, e.g.*, *Ward v. Whitley*, 21 F.3d 1355, 1366 (5th Cir. 1994) ("The arguments of counsel perforce do not have the same force as an instruction from the court."). Jurists of reason could not debate that no due process violation resulted from these purported errors.

Because Carty has failed to show that jurists of reason would find it debatable whether her petition states a valid claim of prosecutorial misconduct that casts doubt upon the correctness of the jury's verdict, we deny a COA.

_____

[7] Article 38.14 provides: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

### 6. Cumulative error

Carty alleges cumulative error by the trial court, prosecutor, and trial counsel. "The cumulative error doctrine provides relief only when the constitutional errors committed in the state trial court so 'fatally infected the trial' that they violated the trial's 'fundamental fairness.'" *Spence v. Johnson*, 80 F.3d 989, 1000 (5th Cir. 1996) (citing *Derden*, 978 F.2d at 1457). To provide relief, cumulative errors must have "more likely than not caused a suspect verdict." *Id.* at 1001 (quotation marks omitted). In this case, without prejudice to the merits of Carty's pending appeal, and jurists of reason could not debate that the summation of otherwise non-prejudicial errors did not cause a suspect verdict or effect the fundamental fairness of the result. We deny a COA.

## B. Procedural Default

Carty also seeks a COA on the district court's procedural default holdings. The district court concluded that Carty failed to exhaust numerous claims by improperly raising them in her Additional Further Response; that Texas courts would consider her unexhausted claims an abuse of writ if she filed them now, resulting in procedural default barring federal habeas review; and that exceptions to procedural default did not apply. *See Carty*, No. 06-614, slip op. at 53–55 (citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." (quotation marks and citation omitted))). The district court granted "a COA on the question of whether [Carty] sufficiently exhausted state court remedies," but it did not specifically mention its corresponding procedural default rulings.

We initially note that the district court's underlying procedural default ruling was entirely dependent on its failure-to-exhaust ruling; thus, Carty's success on her appeal of the exhaustion issue would by definition remove the

procedural default bar to federal review. Both parties addressed that issue in their main briefs, and we do not rule on it here. Presently, Carty asks us to grant a COA on the additional, alternative basis that jurists of reason could debate the district court's conclusion that exceptions to procedural default did not apply. Although the interplay of these various procedural rulings and exceptions raises some interesting legal questions, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 851–857 (1999) (Stevens, J., dissenting), we need not here delve into those nuances, as a COA is not warranted in any case.

Carty initially claims that it is debatable whether Texas state courts would apply an equitable exception to procedural default. *See Ex parte Hood*, Nos. WR-41, 168-10, AP-75,370, 2008 WL 4151666, at *2 (Tex. Crim. App. Sept. 9, 2008). In *Ex parte Hood*, the Court of Criminal Appeals opted to reconsider a prior dismissal of a subsequent application for a writ of habeas corpus based on "developments in the law regarding nullification instructions." *Id.*;[8] *see also Ex Parte Hathorn*,--- S.W.3d ----, 2009 WL 929095 (Tex. Crim. App. 2009) (same); *Ex parte Briseno*, No. AP-76132, 2009 WL 949075 (Tex. Crim. App. Apr. 8, 2009) (ordering briefing on same). In this case, Carty alleges neither legal nor factual post-application developments similar to those that existed in *Ex parte Hood* and its progeny; thus, she has failed to show that the district court's procedural default ruling is debatable by jurists of reason based on these cases.

Carty next argues that the government waived the issue of procedural default. *See Fisher v. Texas,* 169 F.3d 295, 301 (5th Cir. 1999) ("A state waives a procedural bar defense by failing to raise the defense in the district court."). While exhaustion and procedural default are two distinct concepts, in cases where procedural default is based on the failure to exhaust, waiver of exhaustion waives both. *See Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) ("[T]he

---

[8] *Ex parte Hood* and its progeny considered the atypically complex development of Supreme Court precedent in *Smith v. Texas*, 550 U.S. 297 (2007); *Brewer v. Quarterman*, 550 U.S. 286 (2007); *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007); *Penry v. Johnson*, 532 U.S. 782 (2001); and *Penry v. Lynaugh*, 492 U.S. 302 (1989).

state has waived any independent exhaustion argument, as well as the exhaustion argument included within the doctrine of procedural default."). To the extent that the government's waiver of procedural default is dependent on its purported waiver of exhaustion, both parties have briefed that issue in their main briefs, and we will consider the issue in our review of Carty's appeal. Otherwise, it is undisputed that, after prompting by the district court, the government asserted procedural default and Carty received notice and had an opportunity to respond. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).[9] Thus, jurists of reason could not debate that the state did not waive its procedural default defense.

Carty additionally claims that she had shown cause and actual prejudice to excuse her procedural default because the state habeas court and state habeas counsel agreed to an extended period for filing her claims, a period that the state habeas court then did not honor. *See generally Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (recognizing the cause and actual prejudice exception). The district court held that this claim, at its base, was one for ineffective assistance of habeas counsel. Because Carty showed no reason why appointed counsel did not file the claims in her initial application for post-conviction relief, the court concluded that cause did not apply. *See Ries v. Quarterman*, 522 F.3d 517, 526 n.5 (5th Cir. 2008) ("[I]neffective assistance of state habeas counsel cannot provide cause to excuse a procedural default."). Carty has provided no basis on which a jurist of reason could debate the district court's conclusion.

Carty finally claims that a fundamental miscarriage of justice will result if her claims are procedurally defaulted because of her "actual innocence of the

---

[9] As such, we need not address Carty's argument that the state can waive a procedural default that is exclusively dependent on the exhaustion requirement by a means other than counsel's express statement. *Cf. Jackson v. Johnson*, 194 F.3d 641, 652 & n.35 (5th Cir. 1999) ("Although a 'State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement,' 28 U.S.C. § 2254(b)(3), the exhaustion requirement is related but distinct from that of procedural default.").

death penalty." Carty asserts that a fundamental miscarriage of justice occurred in the punishment phase of trial, but only in sufficient depth regarding trial counsel's assistance in presenting mitigating evidence. *See Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) ("Where a habeas petitioner fails to brief an argument adequately, we consider it waived."). Mitigation evidence cannot be the basis of a claim of a fundamental miscarriage of justice. *See Sawyer v. Whitley*, 505 U.S. 333, 347 (1992) ("[T]he 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."). Carty has again provided no basis on which a jurist of reason could debate the district court's conclusion.

Because jurists of reason could not debate the district court's procedural rulings, we deny Carty's request for a COA on the applicability of exceptions to procedural default.

## IV. CONCLUSION

For the above-described reasons, Carty's motion for an additional COA is DENIED. Her request for oral argument on the claims for which the district court issued a COA is GRANTED, and we reserve opinion on those claims until after oral argument.